THE PEOPLE OF THE STATE OF NEW YORK on Complaint of FRANK J. KANE, Respondent, *v.* SAMUEL LEFKOWITZ, Appellant.

First Department, March 17, 1931.

*I. Nicholas Gordon* of counsel, for the appellant.

*Edward V. Loughlin, Deputy Assistant District Attorney*, of counsel [*Thomas C. T. Crain, District Attorney*], for the respondent.

MARTIN, J. The defendant in the first count of the information was charged with the crime of petit larceny, committed on August 16, 1930, in the county of New York. The second count charged the defendant with petit larceny as bailee.

The complainant, Frank J. Kane, a World War veteran, with a friend entered the store of Sol Peckins to buy a shirt. He had a $100 bill which he had received from the United States government as compensation due him as a disabled soldier. Peckins could not change the bill but suggested that he should go across the street

to the Second Avenue Baths to obtain the change. At the baths they were unable to make the change. He then returned to the haberdashery store. Shortly thereafter some one entered the store and yelled, " We've got it now," or " They've got it now." The man who said this took the bill from Kane's hand and went across the street to the Second Avenue Baths, closely followed by the complainant.

The complainant testified with reference to the method used in stealing the money, as follows: " Q. And while you were talking to Mr. Peckins somebody said, they've got the change now? A. Yes. Q. Did you look around? A. I saw this defendant and I remembered his face. Q. Was this defendant in Peckins' store at the time he said, they've got the change now? A. He was in the store. Q. Mr. Peckins was there? A. Yes. Q. And then he took the $100 and walked back to the Baths? A. Yes. Q. Did you follow him? A. Yes. Q. Did Mr. Young follow? A. Yes. Q. Did you see his face at the time? A. Yes, and while I saw him at the stairway. Q. Did you go with this defendant into the Baths? A. I did. Q. To what part of the Baths did you go with this defendant? A. Right up to the top of the stairway he turned to the left and I sat down in the chair and I assumed I was going to get the money at once. Q. Did you remain outside? A. No, within the office. Q. Within the office? A. Yes. Q. Then you say the defendant disappeared? A. He did."

Officer James A. Carey testified that on the 16th of August, 1930, he placed the defendant under arrest after he had been identified by the complaining witness as the man who had stolen the $100 bill. The officer further testified that before he saw the defendant the complainant had already given him an accurate description of the defendant including the color of his shirt.

The defendant testified that he had been the cashier and book-keeper of the Second Avenue Baths for the past eight years and that on the day in question, at the time when the complainant's $100 was stolen, he was not in Peckins' haberdashery store but on his way from Rockaway, and arrived at the baths about ten minutes after nine. He denied that he stole the $100 bill from the complainant. Several other witnesses gave testimony that would place the defendant in Far Rockaway or on his way to New York city at the time of the larceny. The owner and the cashier of the Second Avenue Baths said that the defendant arrived at the baths a little after nine o'clock and that they saw him there.

The complainant testified that he had a good look at the defendant's face before the money was stolen and was positive of his identification. If the defendant did not arrive at the baths until

after nine o'clock and the theft took place at a quarter after eight, it is not likely that the complaining witness would have been able so accurately to describe in detail the defendant as the man who stole the money. The complainant says that the police officer impressed upon him the necessity of being certain of the identification. The police officer says that the complainant's description of the defendant was in all respects accurate.

The most significant matter with relation to the defendant's defense was the fact that he tried to establish an alibi which had evidently been prepared with great care. It has frequently been said that an attempted alibi which fails is strong evidence of guilt. This defendant says he arrived at the subway station in New York at nine-five. At another place in the record he says that he arrived at the Second Avenue Baths at nine-ten. The police officer who was called in this case arrived at the baths at nine-five. The defendant was not present at the time, but later appeared and stated that he had left Rockaway at eight-two and arrived at the baths at nine-ten o'clock.

On cross-examination one of the defendant's witnesses testified that the defendant had been in the baths and had gone out to buy some things for his restaurant; that, some time later, when the witness was talking to the policeman, the defendant made his second appearance in the baths.

It is also significant that when the defendant did return he took a key and started upstairs, stating that he was going up to take a rest. This occurred after he had had an opportunity to see the detective and the complaining witness in the baths looking for the man who had stolen the $100 bill. This alibi was so minutely arranged by the defendant or his witnesses that it was bound to create suspicion. The court interrogated one of the defendant's witnesses as follows: " By the Court: Q. So that the defendant was in the Baths before the officers came in? A. Yes, he was. He went out to buy cigarettes for his restaurant at five minutes after nine. Q. He had been in and went out again? A. Yes." The officer had previously testified that it was five minutes after nine o'clock when he went to the baths and the defendant was absent at that time and came in later.

The alibi appears to have been a little overdone. The testimony of the witness Wolfe indicates that fact. He testified that when the defendant came in the first time he stayed about eight minutes and after those eight minutes he went out to buy cigarettes for his restaurant; that the defendant stayed about ten minutes and returned and then said he was going to take a rest for half an hour. This appears to be the time when defendant saw the

detective and when the defendant stepped out of the back of the room and went upstairs.

It must be borne in mind that most of the facts with reference to the details of this case are admitted. It is admitted that the complaining witness had the $100 bill when he came into Peckins' store to make a purchase and that the storekeeper sent him to the baths to get the change; that they could not change the $100 bill in the baths and that the complaining witness returned to the store and so stated to the proprietor.

The admitted facts, together with the proof offered upon the trial, lead to the conclusion that this defendant was guilty of the crime charged.

There is a second point raised on this appeal which requires our consideration. The defendant says that if he is guilty of any crime it is a more serious one than that for which he was convicted, and, therefore, the Court of Special Sessions had no jurisdiction to try him for a misdemeanor. He contends that he should have been indicted and tried for a felony. The Court of Special Sessions has jurisdiction over misdemeanors. (Code Crim. Proc. § 64, as amd. by Laws of 1904, chap. 563; Inf. Crim. Cts. Act of City of N. Y. [Laws of 1910, chap. 659], § 31, as amd.; *People ex rel. Loughlin* v. *Finn*, 87 N. Y. 533, 535; *People* v. *Manett*, 154 App. Div. 540, 542.) The defendant was tried and convicted for a misdemeanor.

It is argued that since the information alleges facts which constitute a more serious crime, the defendant may not be prosecuted for the lesser offense. It is well settled that the defendant may be charged with and tried for the offense which the district attorney believes is the proper charge in such a case.

In *People* v. *Stein* (80 App. Div. 357, 358) the court said: " The proposition of the defendant then is that inasmuch as the facts in the information warranted a charge of grand larceny as well as of petit larceny, there could be no charge of petit larceny. I think that the rule is that where the facts laid in an information constitute petit larceny or grand larceny, the defendant may be charged with and put on trial for either offense. (*People* v. *Durkin*, 5 Park. 243, 252.) " (See, also, *People ex rel. Van Houton* v. *Sadler*, 97 N. Y. 146; *People* v. *Solomon*, 125 App. Div. 429; *People* v. *Mills*, 91 id. 331.)

In *People* v. *Grote* (153 N. Y. Supp. 631; affd., 170 App. Div. 898) the court said: " The magistrate had a right to determine from the complaint and the evidence before him that the conduct of the defendant was contrary to law and constituted one of the minor offenses cognizable by him as a police magistrate. The discretion vested in a magistrate to so determine cannot be

questioned, and rests upon good public policy and sound experience in the enforcement of law and order in this city. For illustration, it frequently happens that violence is used against peaceful, law-abiding persons upon the public highway, yet the evidence before the magistrate does not measure up to the required standard constituting assault in any of its degrees. Under those circumstances, the person charged with using violence unlawfully against another is subject to the charge of disorderly conduct, and for which he may be tried and convicted in the Magistrate's Court. In the light of the facts in this case it seems to me most extraordinary that the defendant should find fault with the court because he was proceeded against for a lesser offense than a felony or a misdemeanor."

In *People* v. *Solomon* (125 App. Div. 429) this court said: " If the defendants could have been convicted of an attempt to commit robbery, the fact that the district attorney saw fit to prosecute them for a lesser crime is certainly no reason that a conviction for the lesser crime should be reversed."

It is frequently necessary for the district attorney to prosecute for a lesser degree of crime because of the surrounding circumstances. There may be some doubt as to the ability of the People to prove a higher degree of crime and the district attorney may reach that conclusion. Of course, a district attorney should be careful to prosecute for the crime for which the defendant may be convicted. The mere fact that the district attorney failed to do so is not a ground for the reversal of the judgment of conviction. In holding that it may be done, we are not deciding that it should be done.

There was a question of fact in this case which we are of the opinion was properly decided against the defendant and for that reason the judgment should be affirmed. The authorities are to the effect that where there is a question of fact, unless there are some exceptional circumstances, or the finding is clearly against the weight of the evidence, the judgment should be sustained. (*People* v. *Atlas*, 183 App. Div. 595; affd., 230 N. Y. 629; *People* v. *Katz*, 154 App. Div. 44; affd., 209 N. Y. 311; *People* v. *Long*, 150 App. Div. 500; affd., 206 N. Y. 693; *People* v. *Seidenshner*, 210 id. 341.)

The judgment of conviction should be affirmed.

Present — Dowling, P. J., McAvoy, Martin, O'Malley and Sherman, JJ.; Sherman, J., dissents.

Judgment affirmed.