THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* LESTER SAMUELS, Respondent.

Argued November 28, 1940; decided December 31, 1940.

*Charles P. Sullivan, District Attorney (Edmund C. Rowan* of counsel), for appellant.

*Thomas E. Dewey, District Attorney (Stanley H. Fuld* and *Richard G. Denzer* of counsel), *amicus curiæ.*

*Mordecai Konowitz* for respondent.

SEARS, J.  Defendant, a physician, was convicted in the Court of Special Sessions of the City of New York of the crime of perjury in the second degree upon an information by the District Attorney of the county of Queens. The judgment of conviction has been reversed on the law and the information dismissed by order of the Appellate Division, second department, a majority of the justices being of the opinion that the Court of Special Sessions was without jurisdiction over the subject-matter.

The information specifically accused defendant of perjury in the second degree, a misdemeanor, although the allegations of facts were sufficient to show the commission of the crime of perjury in the first degree, a felony.  It is conceded that, if the information is to be construed to charge the commission of a misdemeanor, the Court of Special Sessions had jurisdiction.

The information specifies that the crime charged was committed by defendant as a witness in the trial of George Rothenberg on a charge of abortion; " that in the said trial it became material to inquire and ascertain whether the said defendant Lester Samuels had received any communications from George Rothenberg the defendant on trial for said abortion.  *  *  *  And thereupon defendant Lester Samuels wilfully and knowingly testified falsely " by denying that he had made certain answers to questions asked him at a hearing before the grand jury which indicted George Rothenberg, and that " the aforesaid statements made by the defendant Lester Samuels upon said trial *  *  *  were in a material matter in said action and were false  *  *  *."

Before 1935 this information would have charged only a felony.  The crime of perjury then consisted of swearing

falsely to a material matter (Penal Law, § 1620; L. 1927, ch. 680) and was punishable by imprisonment for a term not exceeding ten years. (Penal Law, § 1633, as amd. by L. 1892, ch. 662.) The question of materiality would have been one of law. (*People ex rel. Hegeman* v. *Corrigan*, 195 N. Y. 1.) False testimony going to the credit of the witness has been held to be material. (*People* v. *Courtney*, 94 N. Y. 490; *Wood* v. *People*, 59 N. Y. 117.) The testimony here charged to be false relates to the credibility of the witness. The Court of Special Sessions would have been without jurisdiction.

In 1935 " materiality " was removed from the general definition of perjury and the crime was divided into two degrees. (L. 1935, ch. 632; Penal Law, §§ 1620, 1620-a.) Perjury in the first degree was defined as perjury as to any material matter, while perjury in the second degree was defined as perjury under circumstances not amounting to perjury in the first degree. (Penal Law, §§ 1620-a and 1620-b.) Perjury in either degree, however, remained a felony until the amendment of section 1633 of the Penal Law in 1936 which classified perjury in the second degree as a misdemeanor. (L. 1936, ch. 93.)

The changes were intended to broaden the scope of the statute relating to perjury but not to create a separate and distinct crime. (Law Revision Commission, Report of 1935, p. 229.) Otherwise the amendment of section 1620 of the Penal Law is meaningless. The section as amended defines one crime, perjury. To constitute that crime, materiality is no longer of the essence. Its existence may warrant an indictment for perjury in the first degree, but it does not constitute a different crime, so as to make such an indictment requisite. The degrees of the crime are not mutually exclusive. Notwithstanding the negative definition of perjury in the second degree, swearing falsely to an immaterial matter is in a legal sense necessarily contained within a description of false swearing to a material matter. By the amendments of 1935 and 1936 the crime of perjury became similar to other crimes with varying degrees and, like

such crimes, subject to the provision of section 444 of the Code of Criminal Procedure. Views to the contrary are based principally upon what was said on the subject of materiality in *People ex rel. Hegeman* v. *Corrigan* (195 N. Y. 1). (Report of the Law Revision Commission, 1939, p. 307.) It must be remembered, however, that *People ex rel. Hegeman* v. *Corrigan* was decided when there were no separate degrees of perjury, and when materiality was an essential element of the crime. Under the present statute the People had the power to elect to try the defendant for a misdemeanor regardless of the gravity of his offense. (*People* v. *Hirsh*, 283 N. Y. 638; *People* v. *Lefkowitz*, 232 App. Div. 18; affd., 257 N. Y. 560.)

We find, in this record, however, error of law which sustains the reversal of the conviction. To establish perjury under our law it is still necessary to prove not only that false testimony was given, but that it was given willfully and knowingly.

Defendant owns a small hospital and is its chief surgeon. In the summer of 1936, a Mrs. Blake was admitted as a patient in the hospital. From Mrs. Blake's statement of the history of her ailments, and from his own diagnosis, defendant concluded that an illegal abortion had been performed, and called the police. After the police had interviewed Mrs. Blake, defendant, in the presence of six other doctors, operated on her. She died a month later. Thereafter a Dr. Rothenberg was indicted for the crime of abortion.

Before the grand jury defendant testified that at one-thirty o'clock in the morning of the day following his operation, he was awakened by the telephone bell, and that the caller said he was George Rothenberg, and proceeded to discuss with him Mrs. Blake's condition. The relevant part of defendant's testimony before the grand jury is as follows: " Q. Do you know a Dr. Rothenberg? A. I do. Q. Has he worked, or has he had patients in your hospital? A. No. Q. You know him as a practicing doctor in Queens County? A. Yes. Q. And did he at any time communicate with

you in connection with this case? A. After I reported the case. Q. And did he come personally? A. By telephone. Q. And did you know it was Dr. Rothenberg that you talked to? A. Yes. Q. You know his voice? A. Yes. Q. You talked to him on the telephone before? A. Yes. Q. And you can swear the man you talked to was Dr. Rothenberg? A. Yes."

Over a year and a half after he had so testified before the grand jury, defendant as a witness for the People on the trial of George Rothenberg, testified that on the night in question he had talked with someone over the telephone whose voice he believed to be that of Dr. Rothenberg. The court refused to allow the conversation to be given without further identification of the caller. Following the ruling, there was a lengthy discussion in which the court, the District Attorney and Dr. Rothenberg's counsel took part as to the proper manner of examining the witness so as to secure an unqualified answer. Each time defendant was asked by the District Attorney or the court who the telephone caller was, he would reiterate his belief that it was the defendant Rothenberg, and each answer would be followed by an objection from Dr. Rothenberg's counsel and a discussion. Finally, treating defendant as a hostile witness, the District Attorney confronted him with statements made by him in the Magistrates' Court in which he identified without qualification the voice of the caller as that of Dr. Rothenberg. Defendant admitted that he had so testified in the Magistrates' Court. However, when asked whether he had given the above-quoted testimony before the grand jury, defendant said he did not give the answer, " By telephone " to the question, " And did he come personally," and that the answers to the questions, " And did you know it was Dr. Rothenberg that you talked to? " " You know his voice? " and " And you can swear the man you talked to was Dr. Rothenberg? " were not " yes." His last words in this respect were, " I still say I believe it was Doctor Rothenberg." Present in defendant's denial of his previous answers is the inference that the answers he had given were not unqualified.

The sole basis of the information against defendant for perjury is, as indicated above, his denial of his unqualified statements before the grand jury. Apart from the fact that these denials were false, there is nothing to show that defendant knew he was testifying falsely or that he did so willfully. There is no evidence that defendant had any interest in the fate of Dr. Rothenberg. If anything, the evidence points the other way. It was shown that defendant's knowledge of Rothenberg was casual, that defendant had called the police and at all times co-operated with them. He evidenced no unwillingness to testify. The continued effort to make the defendant say with a degree of certainty greater than that of sincere belief that a voice heard over a telephone belonged to a particular person with whom he was not well acquainted was needless. (*People* v. *Dunbar Contracting Co.*, 215 N. Y. 416.) Denial under the circumstances here presented of particular answers given a year and a half earlier, is fully consonant with fallibility of memory. We find the evidence insufficient to establish the defendant's guilt beyond a reasonable doubt. (*People ex rel. Hegeman* v. *Corrigan, supra.*)

The order should be affirmed.

CONWAY, J. (dissenting). An information was filed in the Court of Special Sessions of the City of New York, County of Queens, charging the defendant with the crime of perjury in the second degree. After trial the defendant was convicted. Upon appeal to the Appellate Division there was a reversal *upon the law* upon the ground that the crime charged was a felony of which the court of Special Sessions had no jurisdiction and the information was dismissed. Under section 543-a of the Code of Criminal Procedure " it shall be presumed, for the purpose of an appeal to the court of appeals, that the appellate division reviewed the facts and was satisfied with the conviction in that respect, and that but for the alleged error of law, it would not have reversed the conviction."

The facts which have been affirmed are: that the defendant made the statements attributed to him at a hearing

conducted before the grand jury of the county of Queens, that they were false and were made and sworn to by said defendant willfully and knowingly. (*People* v. *Marino*, 271 N. Y. 317; *People* v. *Yannucci*, 283 N. Y. 546.)

We decided in *People* v. *Hirsh* (283 N. Y. 638), subsequent to the decision below, that the degrees of the crime of perjury were not mutually exclusive, but that the crime of perjury under the amendments of 1935 (L. 1935, ch. 632) and of 1936 (L. 1936, ch. 93) was similar to other crimes which were divided into degrees and that section 444 of the Code of Criminal Procedure was, therefore, applicable thereto.

The Court of Special Sessions, therefore, had jurisdiction of the crime charged against defendant, and the order of the Appellate Division should be reversed and the judgment of the Court of Special Sessions of the City of New York, County of Queens, affirmed.

LEHMAN, Ch. J., LOUGHRAN, RIPPEY and LEWIS, JJ., concur with SEARS, J.; CONWAY, J., dissents in opinion, in which FINCH, J., concurs.

Order affirmed.