Zenobia **PERKINS**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 15069.

United States Court of Appeals
Ninth Circuit.

Oct. 22, 1956.

Rehearing Denied Nov. 28, 1956.

Taylor & Taylor, Fairbanks, Alaska, for appellant.

George M. Yeager, U. S. Atty., Philip W. Morgan, Asst. U. S. Atty., Fairbanks, Alaska, for appellee.

Before DENMAN, Chief Judge, BARNES, Circuit Judge, and HALBERT, District Judge.

DENMAN, Chief Judge.

Appellant contends (a) that the evidence does not support the verdict so far as concerns its taking for a wrongful purpose, (b) that it fails to show that the property was taken for the use of appellant and hence is not larceny under the Alaska law, (c) that if the facts show such larceny also constitute a felony under another statute the court had no jurisdiction to try her for a misdemeanor under the statute relied on, and (d) that the court erred in instructing the jury on circumstantial evidence since, appellant claims, there was no circumstantial evidence.

A. *Appellant took the property for a wrongful purpose.*

The Alaska police, apparently suspecting appellant, a Negro woman entertainer in a Fairbanks saloon, was committing larceny from intoxicated men, provided her with what appeared to be a likely victim and the following facts transpired. Appellant disavowed that she was claiming the defense of entrapment and that question is not in issue here.

One Griffin, an Air Force police officer, received from Territorial police officers a wallet containing $60 in paper currency which had been dusted with a powder called gentian violet. This powder, a pale green color when dry, turns an indelible blue when damp. Griffin then entered the Birdland Bar in Fairbanks, Alaska, where appellant worked as an entertainer.

There Griffin met appellant and bought her drinks, using other undyed currency which was not in the wallet. Later, on the pretext of showing appellant a picture in the wallet, he gave appellant an opportunity to observe the money in it. He testified that appellant said to him that he had plenty of money, because she had seen it, and invited him to have a "little fun". He declined, and after seven drinks consumed over two hours and a half, he feigned drunkenness. He stated that he lowered his head on the bar, pretending to have passed out, and that the wallet was in his jacket pocket. Appellant, who meanwhile had left him, so he stated, returned, shook him and, when he did not respond, said: "Where's your wallet, honey?" and removed it from his pocket. Then she stated that it probably contained only a little over $10, and that she would keep it for him. Thereafter she left the bar, Griffin stated, with a man. Griffin then pretended to be ill, got up, knocking glasses from the bar, and left to join other police officers outside at 4:45 a. m.

A little later, the other officers entered the bar, and demanded the wallet, so they testified, from the bartender, one Merk. Merk denied having the wallet, apparently, and then went to the house behind the bar. Thirty minutes later the appellant appeared carrying, so the officers testified, a purse and the wallet. She would not give them the wallet until she entered the bar, apparently because it was daylight outside and, as they observed, her hands were covered with purple stain. The bills in the wallet were purple and wrinkled. Appellant was then arrested. The matron at the jail stated that when she examined appellant she found purple stain inside her brassiere and on her left breast.

This was the sum and substance of the prosecution's case.

Appellant testified that the wallet was on the bar, that she picked it up, that she gave it to Merk to keep for Griffin. Merk corroborates her story; also another airman who was in the bar testified that he saw Merk put the wallet behind the bar.

This airman also testified that a friend of his who was present recognized Griffin as an air police officer and informed Merk of this fact. Merk further stated that a police officer picked the wallet up from the bar, and that appellant did not bring it in from the house.

We think that, strong as is the testimony of the defense, the evidence warrants a verdict that appellant knowingly took the wallet from the appellant intending that it would not be returned to him. The jury may believe such of the testimony as supports its verdict even where a witness has testified in contradictory ways. 3 Wigmore, Evidence 676 (3d ed. 1940).

B. *The wrongful taking constitutes larceny although not shown to be a conversion for the use of the appellant.*

█ The pertinent portion of the act claimed to be violated, Section 65-5-41, A.C.L.A., 1949, as amended, Session Laws of Alaska, 1955, c. 61, reads as follows:

"That if any person shall steal any money, * * * the property of another, such person shall be deemed guilty of larceny, and upon conviction thereof, if the property stolen * * * shall not exceed the value of one hundred dollars, such person, upon conviction thereof, shall be punished by imprisonment in the county jail not less than one month nor more than one year * * *."

Nothing on the face of the statute states that the stolen property shall have been stolen for the use of the thief. It is apparent that if the thief took the money not belonging to him, to enable a friend to use it, say, for buying clothes, it none the less would be stolen. There was no error in failing to instruct the jury that the crime had not been proved unless the evidence showed the appellant took the money to spend it on herself.

C. *Though the facts proven show that appellant also violated another criminal statute creating a felony, the court had jurisdiction to try her on the statute creating the lesser crime of a misdemeanor.*

When the money was stolen there were two statutes creating crimes therefor. One is Section 65-5-41, A.C.L.A., supra, creating the misdemeanor. Another is Section 65-4-24, A.C.L.A., defining the crime of robbery from the person of another without violence, creating a felony. The prosecution chose the misdemeanor statute and appellant contends the court had jurisdiction to try appellant only on the felony charge, citing the statement in Wharton's Criminal Law, Section 39, page 55:

"That if the offense charged was a misdemeanor, and the offense turns out to be a felony, then there must be an acquittal, but which would not bar an indictment for the felony."

The quotation is from a discussion of the doctrine of merger. However, appellant omits the different statement of Wharton in paragraph 33-1:

"At common law it has frequently been held that if on trial a misdemeanor (e. g., assault) turns out to be a felony (e. g., robbery), then, on the ground that the misdemeanor is extinguished by being merged in the felony, the defendant must be acquitted of the felony.

"A more rational doctrine, however, has been established by statutes, and in some jurisdictions by common law, to the effect that the prosecution may in such cases waive the felony, and prosecute only for the constituent misdemeanor, supposing the misdemeanor be proved."

We agree that the Alaska court chose the "more rational doctrine". It was established by law in the following cases: People, on Complaint of Kane v. Lefkowitz, 1931, 232 App.Div. 18, 248 N.Y.S. 615, affirmed 1931, 257 N.Y. 560, 178 N.E. 794; People v. Samuels, 1940, 284 N.Y. 410, 31 N.E.2d 753, 754; People v. Florio, 1950, 301 N.Y. 46, 92 N.E.2d 881, 884-885, 17 A.L.R.2d 993 (cases cited); Wilson v. State, 1949, 89 Okl.Cr. 421, 209 P.2d 512, 514, 212 P.2d 144.

D. *The court properly instructed the jury to consider the circumstantial evidence.*

Appellant's counsel's contention that the court erred in giving any instruction at all because there was no circumstantial evidence at all, is reprehensible nonsense. The circumstance of the dye from the currency staining appellant's undergarments with its inference that it showed her intent to steal protrudes from other evidence like the sore thumb of colloquial speech.

The judgment is affirmed.