■   THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v. ANDREW DUN-
LEAVY, Respondent. THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v.
MARTIN ZINCAND, Respondent.— Orders, Supreme Court, New York County,
both entered November 2, 1972, dismissing the indictments against each defend-
ant, reversed on the law and each indictment is reinstated. Each of the defend-
ants had been indicted on one count of perjury. The Grand Jury was inves-
tigating the murder of one Desiderio Caban. The office of the District Attorney
had located someone who could identify Caban's killer. The witness, however,
repudiated his identification, first to the attorney for the target of the investi-
gation and then to the District Attorney. Each of the indicted defendants had
been hired by the attorney for the target to investigate the whereabouts of this
identifying witness. Each defendant, when before the Grand Jury gave inter-
nally contradictory testimony as to his role in the investigation. The court
below, in dismissing the indictment, in effect, rendered a factual determination
that the statements were not "irreconcilably inconsistent". This was not within
its province. As this court has already clarified, "The test to be applied on
a motion to dismiss the indictment for insufficiency of evidence is whether
there has been a 'clear showing' that the evidence before the Grand Jury if
unexplained and uncontradicted would not warrant a conviction by a trial jury"
(*People* v. *Ward*, 37 A D 2d 174, 176). There was no such clear showing in
either of these cases that the evidence was insufficient. The term " clear show-
ing" which term was used in interpreting section 251 of the Code of Criminal
Procedure has been construed to mean prima facie proof that the crime charged
has been committed (*People* v. *Peetz*, 7 N Y 2d 147, 149; *People* v. *Haney*, 30
N Y 2d 328, 335–336). The burden under the old statute as enunciated in
*People* v. *Ward* (*supra*) is therefore the same as under the new statute (CPL
190.65, subd. 1), which is the one applicable to the case at bar. The dissent,
however, has fallen into the same misapprehension as the court below in attempt-
ing to determine issues of fact on a motion to inspect Grand Jury minutes
and to dismiss the indictment. This is apparent from the authorities cited
for the proposition that the People have failed to meet their burden of proof
to warrant sustaining the indictment. Both *People* v. *Lombardozzi* (35 A D
2d 528, affd. 30 N Y 2d 677) and *People* v. *Samuels* (284 N. Y. 410) involved
dismissal of indictments *after* trial. Furthermore, the alleged lack of materiality
of the testimony of the defendant Dunleavy would have been a question of law
only in the past (*People* v. *Samuels*, 284 N. Y. 410, 414, *supra*; cf. *People ex
rel Hegeman* v. *Corrigan*, 195 N. Y. 1). However, now that the crime of perjury
is divided into several degrees (Penal Law, § 210.00 *et seq.*), the gravity of the
offense is an issue of fact (*People* v. *Clemente*, 285 App. Div. 258, affd. 309
N. Y. 890; *People* v. *Perna*, 20 A D 2d 323). It follows that the existence of
mistake, fallibility of memory or materiality can only be determined by the triers
of the facts, be they a petit jury or a *Trial Justice* presiding at a nonjury trial.
Lastly, we must note that the fact that each indictment contains only one
count of perjury does not warrant dismissal, since at the time of trial should
the evidence warrant it, lesser included counts may also be considered (CPL
300.50; 320.20, subds. 4, 5; cf. *People* v. *Samuels*, 284 N. Y. 410, 414–415,
*supra*). Accordingly, since in each case no showing was made of insufficiency,
each indictment should be reinstated. Concur— Stevens, P. J., Markewich
and Lane, JJ.; McGivern and Nunez, JJ., dissent in the following memoranda
by Nunez, J.: [Dunleavy] The defendant was subpoenaed as a witness and
appeared before the New York County Grand Jury. His testimony was given
on five separate appearances over a three-week period. The transcript is over
400 pages long filled with several thousand questions and answers. The subject

matter of the Grand Jury's investigation was, in part, defendant's role as an investigator for one Gino Gallina, the attorney for a defendant in a homicide case. More particularly, the District Attorney and the Grand Jury sought to ascertain how a 15-year-old boy, Charlie Brown, who had witnessed the homicide of one Desiderio Caban and had identified Arnold Squiteri as the killer, had later repudiated that identification. Defendant's indictment for perjury by inconsistent statement in violation of sections 210.15 and 210.20 of the Penal Law is bottomed on the claim that on January 11, 1972, the defendant testified that Gallina did not tell him, nor did he ask how Gallina had obtained Charlie Brown's address but that on January 13, the defendant testified that when Gallina told him where Brown could be located, he also told him that the boy himself had given him the address. The answers were given by the defendant in different factual contexts to different questions by different prosecutors. The defendant was not asked on January 13 whether there was a discussion between him and Gallina with respect to the source of the information leading to the boy's whereabouts. He was not asked on the 13th whether he had asked Gallina for the source of the latter's information. "The burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry. (*United States* v. *Wall,* 371 F. 2d 398; *United States* v. *Slutzky,* 79 F. 2d 504; *Galanos* v. *United States,* 49 F. 2d 898; *United States* v. *Cobert,* 227 F. Supp. 915.) " (*Bronston* v. *United States,* 409 U. S. 352, 360.) The questions and answers related to events preceding the Grand Jury's inquiry by one year. A perjury prosecution cannot be based on evidence that is as consonant with fallibility of memory as with willful falsification. (*People* v. *Samuels,* 284 N. Y. 410; *People* v. *Lombardozzi,* 35 A D 2d 528, affd. 30 N Y 2d 677.) Furthermore, the necessary element of the materiality of the testimony complained of (Penal Law, § 210.15) is not supported by this record. Whether Gallina told Dunleavy how Gallina learned of Brown's address when he told Dunleavy where Brown could be found seems to me quite immaterial to the matter under inquiry. The Grand Jury could in no wise have been influenced by defendant's testimony that Gallina had or had not told him how he had learned of Brown's whereabouts. It would be basically unfair to subject the defendant to a first degree perjury conviction for an alleged irrelevant minor contradiction during a lengthy, unfriendly and exhaustive examination by two Assistant District Attorneys. Indeed, at one point, the Assistant District Attorney accused defendant of giving "evasive and manifestly false" testimony and threatened to indict him for criminal contempt of the Grand Jury. The majority's reliance on *People* v. *Ward* (37 A D 2d 174) is misplaced. I quote from our *Per Curiam* opinion at page 176: "In each of the foregoing instances the lower court accepted the excuse of mistake and obviously found as a fact that a mistake rather than a willful fabrication had been made by the defendant. In so doing the court below usurped the function of a petit jury." Dunleavy does not offer the excuse of mistake. He denies having made irreconcilably inconsistent statements. Inconsistencies there are, as perforce there are bound to be in over 400 pages of testimony, but not of the nature condemned by the perjury statutes. I would affirm the dismissal of the indictment. [Zincand] By indictment defendant has been accused of perjury by inconsistent statements given before the New York County Grand Jury, in that on January 18, 1972 defendant testified that a certain 15-year-old boy stated that he had been threatened by the police whereas on January 20, 1972, he testified that the boy never stated that he had been threatened by the police. The defendant was questioned at length by two Assistant District Attorneys during a two-week period. On January 18 he was questioned with respect to

his role as an observer in an interview of the 15-year-old boy, a prospective prosecution witness, who had retracted a prior identification in a homicide investigation. In an attempt to explain his testimony that he had been "uncomfortable" during the interview, the defendant testified that the young boy-witness had stated that the only reason he had identified a picture for the police was that he had been threatened by them. On January 20, two days and several hundred questions later, the same line of interrogation was resumed. After answering several questions consistent with his prior testimony of the 18th that the boy had been abused and intimidated by the police and caused and made to identify a picture by them, the prosecutor then defined the word "threat" as physical injury or deprivation of something extremely valuable to him and asked defendant to answer questions within the given definition. Defendant again testified that the boy had said he had been threatened and that he had been "made to" identify a picture. It was only after persistent questioning and in the context of the Assistant District Attorney's definition of the word "threat" that the defendant answered that the boy had not been physically threatened, or threatened "to deprive him of something he needed badly." However, defendant persisted in his testimony that the boy had been "made" by the police to identify the photograph. I agree with the court below that there has been no clear showing that the defendant's statements are either irreconcilably inconsistent or that the circumstances were such that each of the defendant's statements, if false, was perjuriously made as required by section 210.20 of the Penal Law. Defendant's testimony on both dates is his explanation of his impression that the boy had stated that he had been influenced or coerced by the police into making an identification. Furthermore, defendant's answers on the 18th were made without the benefit of the prosecutor's definition of the word "threat", albeit erroneous, whereas his answers of the 20th were made, at the District Attorney's request, within the context of such definition. The prosecution has failed to meet the burden imposed by our courts that before a defendant may be prosecuted for perjury by inconsistent statements, the alleged inconsistencies must be at such a variance as to exclude all hypotheses that there were irreconcilable differences and, if so, the differences were not due to mistake, fallibility of memory, lack of consciousness of the nature of the statement made or correction of prior testimony. (See *People v. Samuels*, 284 N. Y. 410; *People v. Lombardozzi*, 35 A D 2d 528, affd. 30 N Y 2d 677; *People ex rel. Hegeman* v. *Corrigan*, 195 N. Y. 1.) The indictment was properly dismissed.