Fuchsberg, J. (dissenting).
The issue is whether the evidence adduced before the Grand Jury was sufficient to sustain an indictment for grand larceny second degree of defendant Ann Mayo who for eight years had been employed by the New York State Thruway Authority as a toll collector at the Tappan Zee Bridge. The County Court dismissed the indictment; the Appellate Division reinstated it by a divided court.
Cars approaching toll booths obtained passage in any of three ways: by cash, credit or commutation tickets, the last involving stubs detached from booklets when presented by motorists. For each car, the toll collector pushed a button, activating a computer which recorded the type of transaction. In addition, a pressure-sensitive treadle in the pavement noted the number of vehicles passing through each booth. Thus, the total number of vehicles must coincide with the number of times the buttons were pressed, regardless of how passage was obtained.
Cash and credit transactions were audited daily. In Ms. Mayo’s case, so far as appears, they were always in order. Commutation tickets, though required to be turned in, were checked only on a random basis. However, an audit conducted during the four-week period preceding March 9, 1973 showed her to be 2,153 commutation tickets short. On that day, when a State Trooper, who had been called to arrest her, approached her in the locker room, she fled into the ladies room, where he took from her 122 commutation tickets before she could flush them down the drain. A 10 and 4 single dollar bills were with her purse.
This was the only testimony the People presented to the Grand Jury. No witness was produced who made any observa *1005 tion of her pocketing even a single cash toll. There was no attempt to identify the small sum of money she had on her, whether by markings or otherwise. There was not even any evidence presented to show that any recent test had been made to establish the computer’s accuracy. During a voluntary appearance before the Grand Jury, she testified her prior record was blameless, that she had been assigned to work as a relief collector moving from booth to booth, that the rule about turning in and counting commuter stubs was not adhered to and that she had been frightened when the trooper had approached her.
A Grand Jury may indict a person for a crime only where "(a) the evidence before it is legally sufficient to establish that such person committed such offense and (b) competent and admissible evidence before it provides reasonable cause to believe that such person committed such offense.” (CPL 190.65.) Legally sufficient evidence is not present unless the evidence establishes "every element of the offense charged and the defendant’s commission thereof’ (CPL 70.10, subd 1) and "The test to be applied on a motion to dismiss the indictment for insufficiency of evidence is whether there has been a 'clear showing’ that the evidence before the Grand Jury if unexplained and uncontradicted would not warrant conviction by a trial jury.” (People v Dunleavy, 41 AD2d 717, affd 33 NY2d 573; see, also, People v Potwora, 44 App Div 207, 210; People v Peetz, 7 NY2d 147,149; People v Howell, 3 NY2d 672, 675).
To constitute the crime of larceny, there must be an intent coupled with a taking or withholding of property from its owner (Penal Law, § 155.05, subd 1; see Abrams v Great American Ins. Co., 269 NY 90, 92; People v Miller, 169 NY 339; People v Fitz-Gerald, 195 NY 153). No such showing was made here. There was no proof that the Thruway Authority had been deprived of a cent. The commuter stubs were usable only as part of booklets; once detached and collected, they merely served as a form of record. There was no proof that, in that state, they had a money value. We need not question whether the defendant was careless, stupid, inefficient, a rule violator. None of those by themselves constitutes grand larceny. And, while, for all we know, surveillance of her might have produced more evidence, such police activity had either not been essayed, or, if it had, it bore no fruit. Whatever explanation there may be for her possession of the 122 stubs at the time of her arrest, her cash and credit accounts were *1006 clear. One can theorize as to how the facts available might form part of a skein necessary to prove grand larceny, but here they stand alone. Surmise, suspicion or speculation is no substitute for evidence.
That defendant had to be prevented from flushing the tickets down the drain at the time of her arrest does not provide the missing links necessary to support this indictment for grand larceny. "While * * * evidence showing consciousness of guilt may be used to strengthen 'other and more tangible evidence’ of guilt, it is not alone sufficient to sustain a conviction. ” (Richardson, Evidence [10th ed], § 167, p 134 [emphasis added]; People v Leyra, 1 NY2d 199, 209.)
It is undeniable that, under our system of justice, it is impermissible for a presumption of guilt to replace the presumption of innocence.
For these reasons, the order of the Appellate Division should be reversed and the order of the County Court dismissing the indictment, and granting leave to the People to represent it, should be reinstated.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones and Wachtler concur in memorandum; Judge Fuchsberg dissents and votes to reverse in a separate opinion in which Judge Cooke concurs.
Order affirmed.