OPINION OF THE COURT
Leonard E Rienzi, J.
Defendant moves for inspection of the grand jury minutes and dismissal of the indictment. He is charged in a seven count indictment with manslaughter in the second degree (Penal Law § 125.15 [1]), criminally negligent homicide (Penal Law § 125.10), four counts of reckless endangerment in the first degree (Penal Law § 120.25) and assault in the third degree (Penal Law § 120.00 [2]). One count of reckless endangerment in the first degree (count 7) relates to March 4, 2003; the remaining counts relate to December 15, 2003. In count 1, manslaughter in the second degree, the People allege that defendant “recklessly caused the death of Lorenzo Pavia, by digging an unsafe trench and directing Lorenzo Pavia to work inside the trench, which collapsed, thereby causing his death.” Count 2, criminally negligent homicide, charges that the same acts were done “by criminal negligence.” Counts 3, 4 and 6 charge reckless endangerment of Lorenzo Pavia (count 3), a coworker John Paci (count 4), and rescue workers and firefighters (count 6). Count 5 charges reckless assault on John Paci. Count 7 charges reckless endangerment of an unnamed construction worker on March 4, 2003.
The focus of the grand jury presentation related to a construction accident on December 15, 2003 at Taylor Street and Paris Court in Richmond county. The evidence before the grand jury indicated that a trench which had been dug for the installation of sewer pipes collapsed. Lorenzo Pavia, a worker at the site, was buried under a mound of earth and asphyxiated. John Paci, a coworker inside the trench at the time of the collapse, was injured.
The evidence before the grand jury indicated that defendant Kenneth Formica was a partner in Formica Construction Corporation and was present at and supervising the site where *406 the accident occurred. Mr. Formica is a licensed contractor with approximately 30 years’ experience. A trench had been dug by defendant using an excavator. The trench was approximately 25 feet long, 6 to 7 feet wide and 11 to 15 feet deep. The defendant directed his employees Lorenzo Pavia and John Paci to connect a sewer pipe at a point in the trench that was 12 to 15 feet below street level. The trench collapsed killing Mr. Pavia and injuring Mr. Paci.
The evidence adduced before the grand jury indicated that since the trench was more than five feet deep, both federal (29 CFR 1926.650) and city (Administrative Code of City of NY § 27-1032) regulations required shoring or sloping. The defendant testified before the grand jury that he was aware of the “five foot rule” regulations. The walls of the trench were vertical and not shored. The street was not closed to traffic which was driving by during work in the trench. The excavator, which was working on the trench, was situated on the edge of the trench. The excavator was not positioned on steel plates, thus increasing the likelihood of ground vibrations. The soil from the trench was “pre disturbed” and was classified as “Type B” soil by the OSHA laboratory in Salt Lake City, Utah. Testimony before the grand jury from a number of witnesses described the soil from the trench as “wet” (grand jury minutes, Oct. 18, 2005, at 25), “all muddy” (grand jury minutes, Oct. 18, 2005, at 36), “very muddy” (grand jury minutes, Oct. 18, 2005, at 8) and “really soft” (grand jury minutes, Oct. 18, 2005, at 36).[1]
The testimony before the grand jury further indicated that on March 4, 2003 at 1400 Clove Road, New York City Department of Transportation Highway inspectors observed a man working in a 10-foot-deep trench at a Formica work site. The trench was not shored or sloped. Defendant Kenneth Formica was supervising the work site. An inspector ordered the worker out of the trench and informed defendant that the worker should not have been in the trench because it was unsafe. The inspector ordered the defendant to put shoring in the trench. The defendant complied and six days later when an inspector returned to the work site, there was shoring in the trench.
The evidence presented to a grand jury must be legally sufficient evidence which, if accepted as true, would establish every element of the crime charged and the defendant’s commission *407 of it. (CPL 70.10 [1].) The Court of Appeals held that the threshold is reached when the evidence presented to the grand jury is prima facie proof that the crime charged had been committed by the defendant. (People v Haney, 30 NY2d 328, 335 [1972].) The test is whether the proven facts and inferences that flow logically from them, viewed in the light most favorable to the People, if unexplained and uncontradicted, would be sufficient to warrant conviction by a trial jury. (People v Swamp, 84 NY2d 725 [1995]; People v Jennings, 69 NY2d 103 [1986]; People v Pelchat, 62 NY2d 97 [1984].) The People need not establish defendant’s guilt beyond a reasonable doubt, but only the inference that he committed the crimes with which he is charged. (People v Deegan, 69 NY2d 976 [1987].) In evaluating legal sufficiency, the court may neither resolve factual questions that are within the province of a petit jury (People v Dunleavy, 41 AD2d 717 [1st Dept 1973]), nor substitute its own inferences for those the grand jury has drawn (People v Dordal, 55 NY2d 954 [1982]).
The evidence adduced before the grand jury supports the elements of each crime charged as those crimes are defined in the Penal Law. According to the Penal Law, “A person is guilty of manslaughter in the second degree when: (1) He recklessly causes the death of another person.” (Penal Law § 125.15 [1].) “A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists.” (Penal Law § 15.05 [3].) “A person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person.” (Penal Law § 125.10.) “A person acts with criminal negligence with respect to a result or to a circumstance described by a statute when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists” (Penal Law § 15.05 [4]). The mental state of the actor for both recklessness and criminal negligence situations requires that the risk must be of such nature and degree that disregarding the risk (“recklessly”) or the failure to perceive it (“criminal negligence”) “constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.” (Penal Law § 15.05 [3], [4].) Thus the risks for each mental state are equal. The distinction between the mental states of reckless and criminally negligent conduct, in simplest terms, is that for reckless conduct the actor is aware of and consciously disregards *408 the risk, while for criminally negligent conduct the actor fails to. perceive the same degree of risk. The totality of the evidence adduced in this lengthy and comprehensive grand jury presentation supports the alternative findings by the grand jury that defendant either was aware of and consciously disregarded the risk of trench collapse or that he failed to perceive the same risk.
The cases cited by defendant are distinguishable. In People v Warner-Lambert Co. (51 NY2d 295 [1980]), the Court of Appeals held that although defendants were aware of “a broad, undifferentiated risk of an explosion” based on ambient magnesium stearate dust used in chewing gum manufacturing, defendants were not criminally liable where the “triggering cause” of the explosion was “neither foreseen nor foreseeable.” (People v Warner-Lambert Co. at 298.) In the instant case, the risk of trench collapse was neither “broad” nor “undifferentiated” but rather was clear and specific, based on the depth of the trench, the quality of the soil and the failure to slope or shore, despite clear safety regulations and a prior specific governmental safety admonition. While the “triggering cause of the explosion” in Warner-Lambert “was neither foreseen nor foreseeable” (People v Warner-Lambert at 298), the direct cause of death (trench collapse asphyxiation) was foreseeable and should have been foreseen. In People v Roth (80 NY2d 239 [1992]), an employee of defendants’ petroleum transporting company was killed when petroleum vapors exploded as the deceased was cleaning a tank trailer. The explosion occurred when the deceased employee placed an unprotected trouble light in the path of a high pressure washer during tank cleaning operations. The Court of Appeals held that an explosion caused in this manner was not foreseeable. (People v Roth at 244.) On the issue of foreseeability, it affirmed dismissal of the reckless manslaughter and criminally negligent homicide charges, while reinstating reckless endangerment charges which the Appellate Division had dismissed. (People v Roth at 245.) In People v Reagan (94 NY2d 804 [1999]), two workers drowned after a trench in which they were installing water and sewer lines collapsed and burst a water line. When a pressurized water pipe was discovered prior to the accident, defendant immediately stopped work, consulted a city plumbing inspector and proceeded in the inspector’s presence by hand digging and moving the trench away from the pipe. The Court of Appeals held that the defendant, rather than disregarding a risk, took concrete steps to avert it. The Court of *409 Appeals held that the deaths of the workers by drowning was not foreseeable and affirmed the Appellate Division’s dismissal of the reckless manslaughter and reckless endangerment charges.[2]
Thus in each case cited by defendant (Warner-Lambert, Roth, Reagan), the Court of Appeals found the critical issue of foreseeability to be absent. In the instant case, the People met their burden of establishing foreseeability.
Defendant’s motion to dismiss is denied with respect to the legal sufficiency of each count of the indictment. Defendant’s motion to dismiss based on the introduction of the OSHA interview with defendant is denied. In the context of this grand jury presentation and the volume of legally admissible evidence presented, the integrity of the grand jury was not impaired. Defendant’s motion to dismiss in the furtherance of justice is denied.

. The defendant, contrary to other witnesses, testified that the soil was “very dry”; “[i]t was virgin ground, and it was very tight, compact soil.” (Grand jury minutes, Oct. 25, 2005, at 11); the ground was “not wet” (at 16).

. The trial court upheld criminally negligent homicide charges. The legal sufficiency of those charges was not appealed to either the Appellate Division or Court of Appeals.