[887 NYS2d 511]

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v MICHAEL
M. SMITH, Defendant.

County Court, Essex County, October 13, 2009

**APPEARANCES OF COUNSEL**

*Livingston L. Hatch*, *Public Defender*, Elizabethtown, for defendant. *Julie A. Garcia*, *District Attorney*, Elizabethtown (*Michael P. Langey* of counsel), for plaintiff.

## OPINION OF THE COURT

RICHARD B. MEYER, J.

Pretrial motion (CPL 255.10) by the defendant for relief in the nature of dismissal or reduction of an indictment, granting discovery and/or a bill of particulars, preclusion and/or suppression of evidence, and other relief.

The defendant is charged by a one-count indictment with having committed the crime of criminally negligent homicide (Penal Law § 125.10). The charges arise out of an incident alleged to have occurred on November 15, 2008 in the Town of Keene, Essex County, in which it is claimed the defendant shot and killed a member of his deer hunting party.

## I. Dismissal of Indictment

The defendant moves to dismiss the indictment on the grounds that (1) the indictment is defective (CPL 210.20 [1] [a]; 210.25), (2) the evidence before the grand jury was not legally sufficient to establish the offenses charged or any lesser included offense (CPL 210.20 [1] [b]; 210.30), and (3) the grand jury proceeding was defective (CPL 210.20 [1] [c]; 210.35). The defendant also moves to inspect the grand jury minutes (CPL 210.30).

### A.

An indictment is jurisdictionally defective only if it does not effectively charge the defendant with the commission of a particular crime, such as by failing to allege that the defendant committed acts constituting every material element of the crime charged (*People v Iannone*, 45 NY2d 589, 600 [1978]). Incorporation by reference to the statute operates to constitute allegation of the elements of the crime (*see People v D'Angelo*, 98 NY2d 733 [2002]; *People v Ray*, 71 NY2d 849, 850 [1998]; *People v Cohen*, 52 NY2d 584, 586 [1981]; *People v Squire*, 273 AD2d 706, 706-707 [2000]). The court has examined the indictment and finds that it fully complies with CPL 200.50 (7).

### B.

The defendant's motion to inspect the grand jury minutes is granted. Upon inspection, the minutes and voting sheet filed with the court reveal that a quorum of at least 16 grand jurors was present during the presentation of evidence and at the time the assistant district attorney instructed the grand jury on the law, and at least 12 of those grand jurors voted to indict the de-

fendant. Also, the instructions were not defective as a matter of law. The defendant's motion to dismiss the indictment for alleged defects in the grand jury proceedings is denied.

## C.

The court has reviewed the grand jury minutes to determine whether sufficient evidence was presented to support each and every count in the indictment. "[A]n indictment is presumed to be based on legal and sufficient evidence" (*People v Bergerson*, 17 NY2d 398, 402 [1966]; *see also People v Howell*, 3 NY2d 672, 675 [1958]). In determining the sufficiency of the evidence before the grand jury, including proof encompassing any requisite culpable mental state (*People v Mayo*, 36 NY2d 1002 [1975]; *People v Lott*, 104 AD2d 710 [1984]; *People v Delameter*, 96 AD2d 629 [1983]), the court must view such evidence in a light most favorable to the prosecution, and determine whether such evidence, if unexplained and uncontradicted, would constitute prima facie proof so as to warrant a conviction after trial (*People v Swamp*, 84 NY2d 725, 730 [1995]; *People v Pelchat*, 62 NY2d 97, 105 [1984]; *People v Valles*, 62 NY2d 36 [1984]; *People v Dunleavy*, 41 AD2d 717 [1973], *affd* 33 NY2d 573 [1973]). "In the context of the Grand Jury procedure, legally sufficient means prima facie, not proof beyond a reasonable doubt" (*People v Mayo*, 36 NY2d at 1004).

> "In determining whether the People have reached this stage, all questions as to the quality or weight of the proof should be deferred. In other words if the prosecutor has established a prima facie case, the evidence is legally sufficient 'even though its quality or weight may be so dubious as to preclude indictment or conviction pursuant to other requirements.' To further illustrate the point the Commission Staff noted that 'evidence may be "legally sufficient" to support a charge although it does not prove guilt "beyond a reasonable doubt," and for that matter, although it does not even provide "reasonable cause" to believe that the defendant committed the crime charged.' (See Commission Staff Comment to Proposed CPL 35.10, now CPL 70.10)" (*People v Sabella*, 35 NY2d 158, 167 [1974]).

The grand jury minutes reveal that Smith testified after waiving immunity. He told the grand jury that he was hunting on the morning of November 15, 2008 with Leo Hickey, Kevin Straight, and his brother Mark Smith. All four of them were

wearing camouflage clothing with no hunter's orange, and at some point they became separated. Smith stationed himself in an area of thick brush and waited for deer to appear. He saw a six-to-eight-point buck approximately 100 yards away but could not get "a good, clean shot." In a written statement to law enforcement, which was read to the grand jury, Smith stated that he then lost sight of the deer when it "walked into a heavily wooded area." He testified that he crouched down and waited for a few minutes. As he remained in that position, he observed one antler of a deer through the thick brush. In his written statement, he admitted to raising his rifle

> "and looked through the scope and saw what I thought was the head of the deer with antlers. I thought I saw the brown part of the back of it's head. I thought the deer had turned away and started moving away from me. I believed this was my only chance to shoot this deer and I believed I was aiming at the back of the head and fired one round."

After waiting five minutes, he made his way over to where the deer had been and observed Hickey, who had been shot in the head, dead on the ground.

"A person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person" (Penal Law § 125.10). "A person acts with criminal negligence with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists" and "[t]he risk . . . [is] of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation" (Penal Law § 15.05 [4]).

Recognizing that "a long 'distance separates the negligence which renders one criminally liable from that which establishes civil liability' (*People v Rosenheimer*, 209 NY 115, 123)" (*People v Montanez*, 41 NY2d 53, 56 [1976]), there was legally sufficient evidence here to support the charge of criminally negligent homicide. There is surprisingly little New York case law involving hunting accidents and prosecutions for criminally negligent homicide. In *People v Woodruff* (4 AD3d 770, 771 [2004]), the Court dealt with the question of whether an indictment charging manslaughter in the second degree was sufficient where the defen-

dant accidentally shot his hunting companion and left "the scene without immediately reporting the accident or otherwise aiding the victim, who bled to death." However, the courts of other states have addressed this issue, albeit under their own respective statutes (*see e.g. Cable v Commonwealth*, 243 Va 236, 415 SE2d 218 [1992]; *State v Desoto*, 6 So 3d 141 [La 2009]).* In *Cable*, the court held that "[s]ome of the very factors upon which the defendant relies to exonerate himself of criminal negligence actually tend to support the conviction," namely that "[t]he defendant knew that his companion was nearby dressed in camouflage clothing . . . , so attired to conceal his presence[,] was fully aware that the thickness of the foliage would render a person so attired still more obscure," and "knew, or should have known, one of the basic principles of hunting safety, . . . 'always be sure of your target and what is behind it before you fire' " (243 Va at 241, 415 SE2d at 221). In *DeSoto*, the defendant shot and killed his hunting partner when he shot at what he thought was a deer at a time when he mistakenly believed his partner was in a ladder stand. Neither man wore hunter orange.

The defendant, "as a hunter, had a duty to properly identify his target and everything in the area prior to firing his firearm" (*Lawson v Commonwealth*, 35 Va App 610, 620, 547 SE2d 513, 518 [2001]). The evidence here establishes that the defendant discharged his firearm through and into an area which he described as "thick brush," at what he thought was the back of the head of a deer, at a time when he did not know where his camouflaged companions were situated. Thus, whether the bullet which struck and killed Hickey was a direct hit, a stray, or a ricochet, may be irrelevant and immaterial. It is for a jury to determine whether (1) a reasonable person would have perceived the risk that a bullet fired into thick brush at an uncertain target might strike another person dressed in camouflage whose whereabouts were unknown to the defendant, either directly or

---

* Under Virginia law, "[a] person who is criminally negligent in omitting to perform a duty is guilty of involuntary manslaughter, although no malice is shown. *Davis v. Commonwealth,* 230 Va. 201, 205, 335 S.E.2d 375, 378 (1985)" (*Cable v Commonwealth*, 243 Va 236, 241, 415 SE2d 218, 221 [1992]).

In Louisiana, a person is guilty of "[n]egligent homicide" when a human being is killed "by criminal negligence" (La Rev Stat Ann § 14:32 [1]), the latter term being defined as "such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances" (La Rev Stat Ann § 14:12).

by ricochet, (2) the risk was substantial and unjustifiable, and (3) defendant's failure to perceive that risk constituted a gross deviation from "the standard of care that a reasonable person would observe in the situation" (Penal Law § 15.05 [4]).

II. Discovery

The defendant moves for an order compelling the prosecution to furnish certain items specified in his written discovery demand dated May 18, 2009. In response to the motion, the prosecution contends that all items have now been furnished. The defendant is granted 10 days from the date of this decision and order to file an appropriate motion under CPL 200.95 (5) and/or 240.40 (1).

III. Suppression of Tangible Property and Statements

Defendant moves for *Mapp, Huntley* and *Dunaway* hearings (*Mapp v Ohio,* 367 US 643 [1961]; *People v Huntley,* 15 NY2d 72 [1965]; *Dunaway v New York,* 442 US 200 [1979]; *see* CPL 710.10 *et seq.*) to suppress tangible physical evidence allegedly obtained from the defendant and his vehicle as well as statements attributed to the defendant. A *Huntley* hearing is to determine the voluntariness of the statements allegedly made by the defendant, and a *Dunaway* hearing is to determine if statements attributed to defendant were the products of an impermissible arrest. The purpose of a *Mapp* hearing is to determine the admissibility of physical evidence obtained as a result of a search and seizure.

The defendant's motion is granted to the extent that a hearing on the issues raised is hereby scheduled for November 6, 2009 at 9:30 A.M., but a decision on the remaining aspects of the defendant's motion to suppress is reserved pending completion of that hearing.

IV. Other Relief

To the extent that this decision and order has not addressed any request for relief in the defendant's pretrial motion, the same is hereby denied.