THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* WILLIAM W. PAIGE, Appellant.

Argued April 17, 1940; decided July 24, 1940.

. *Samuel Stern, Meyer Alterman* and *N. Henry Lindenauer* for appellant. The evidence did not warrant a verdict of murder in the first degree. (*People* v. *Ludkowitz,* 266 N. Y. 233; *People* v. *Cashin,* 259 N. Y. 434; *People* v. *Filippelli,* 173 N. Y. 517.)

*Thomas E. Dewey, District Attorney* (*Stanley H. Fuld* and *Burr F. Coleman* of counsel), for respondent. The defendant's guilt was established beyond a reasonable doubt. (*People* v. *Becker,* 215 N. Y. 126; *People* v. *Sanducci,* 195 N. Y. 361; *People* v. *Broncado,* 188 N. Y. 150; *People*

v. *Rodawald*, 177 N. Y. 408; *People* v. *Breen*, 181 N. Y. 493; *People* v. *Ferraro*, 161 N. Y. 365; *People* v. *Fish*, 125 N. Y. 136; *People* v. *Trezza*, 125 N. Y. 740.)

LEHMAN, Ch. J. · The defendant has been convicted of murder in the first degree. He does not deny that in a fight on December 29th he stabbed Robert Forbes, a youth nineteen years old, and that Forbes died as a result of the wound he inflicted, but he claims that the homicide was justifiable because committed in lawful self-defense.

Many witnesses testified for the People. The defendant contradicted much of their testimony but the jury was justified in accepting the testimony of the witnesses for the People. The question remains whether their testimony is sufficient to prove beyond a reasonable doubt that the homicide was committed by the defendant from a deliberate and premeditated design to effect the death of Forbes and that the defendant is, therefore, guilty of murder in the first degree. In stating briefly the circumstances surrounding the homicide, we refer almost exclusively to the testimony of the witnesses for the People.

On the evening of December 26, 1939, defendant and Forbes had a fight in the gallery of the gymnasium of the Harlem Y. M. C. A., where both were spectators at a basketball game. The homicide, three days later, was the sequel of that fight. Previously there was no rivalry or animosity between Forbes and the defendant. Indeed, they were not acquainted. Forbes was an athletic young man who had played basketball while a student at a high school in Harlem and was well known in Harlem and popular with his former schoolmates. He was a first-year student at an out of town college and was home for the Christmas holidays. He went to see the basketball game with two friends and sat with them in the gallery of the gymnasium. Other young friends of Forbes were in the gallery and seated near them. The defendant Paige also had attended a high school in Harlem. He was a few years older than Forbes and was a W. P. A. worker in a Harlem health clinic. He accompanied a young

girl to the basketball game and, finding no vacant seats in the gallery, they stood behind the chairs occupied by Forbes and his friends. The young girl rested her hand on the back of one of these seats and twice during intermissions in the game a friend and companion of Forbes, who was sitting in that chair, leaned back and in doing so caught her hand against the back of the seat. Angry words followed and then a fist fight.

The testimony of the People's witnesses shows that the defendant, by the use of foul and insulting language, invited the resentment of Forbes and his friends and perhaps even attack and physical chastisement by them. In the fight which followed, the defendant was without friends or supporters in the gallery while Forbes was surrounded by his friends and admirers. The fight was stopped by attendants of the " Y " and by a policeman, and all those who had part in it were told to go home.

Though the blame for the fight may properly be placed upon the defendant, yet after the fight was stopped he felt an overwhelming sense of injury because he had been humiliated before the young girl whom he escorted to the game, and a sense of wrong not unmixed with fear because Forbes was a popular youth and his friends had given him moral and even physical support in the fight. That night in the " Y " building, he made threats to Forbes and his friends that he would not forget what had occurred but would " see " them again. The next day he told a number of the People's witnesses, including friends of Forbes, that he would " get " Forbes and even that he would " kill " him, and showed some of them a knife; but it is significant that the witnesses for the People who heard these threats testified that when the defendant threatened to " kill " Forbes, they understood that he was not using that word in a literal sense or expressing any intent to do more than hurt Forbes.

It is even more significant that the testimony of the People's witnesses also shows beyond any possible doubt that the defendant's threats were accompanied by expressions

of fear as well as resentment. Thus, one witness testified that when he showed them the knife, he explained: " I am afraid because they jumped on me once and I would not want them to jump on me again; " and again that " he said that he was afraid those boys would jump on him and that he was going to get Bobby Forbes." Another witness for the People testified that on the day after the encounter in the gallery of the " Y " the defendant told him about it. According to the witness the defendant " seemed to be pretty scared " that Forbes and his friends would attack him without giving him a chance to defend himself. According to this witness: " He said, ' There is only one way for the fellows to make them leave him alone,' he said he had to hurt one of the fellows to make them leave him alone," and when this witness suggested that he thought he could " straighten out the matter " with Forbes and his friends, the defendant gratefully accepted the suggestion and together they went to the " Y " hoping to find some of the boys there.

On the evening of the affray the defendant had two encounters with Forbes. The first encounter was on the street in a neighborhood where Forbes and his friends were accustomed to meet. Forbes was surrounded by a small crowd of his friends. The defendant was alone except for one companion who felt no ill-will towards Forbes and who was not a partisan of the defendant and had, apparently, no intention of helping the defendant if he got into a fight. Alone, according to the testimony of the People's witnesses, the defendant ran towards Forbes and his friends — pulling out his knife as he came near them. They scattered, running off in different directions, but the defendant caught up with Forbes and cut his lip superficially — the cut, indeed, was so slight that it may be doubted whether defendant even knew that he had inflicted it.

After the fight the defendant and his companion took a bus to visit a girl friend. The defendant, it appears, said to his companion, " Now, they will respect me." As they got off the bus, more than half a mile from the corner

where the original encounter had taken place, they saw Forbes and an unidentified companion. The meeting was purely fortuitous. The defendant started towards Forbes, again drawing his knife. Defendant's companion ran away and Forbes' companion was not seen again. Forbes seized a stick which supported a push cart at the curb. There was a short fight. Then defendant ran after his friend and they went together as planned to pay the visit which they had started to pay. Forbes thereafter fell to the ground and died in a few minutes from stab wounds. The defendant, so far as appears, did not know that Forbes was seriously injured until much later that night, when friends came to his room, where he was asleep, and told him of rumors they had heard about the fight and a fatal result. Then he left his room and stayed away till the next evening when he went to a police station and gave himself up.

Ordinarily, where a person has said he would "kill" another and a few days later does kill him, a finding that the homicide was committed with a deliberate, premeditated design to effect the death of the person killed, is justified by the evidence and often no other inference is possible. Here, however, even hostile witnesses who heard the threat to "kill" admit that they did not think that the defendant had an actual intent to kill. In the composite testimony of many witnesses for the People, the picture of the defendant is clearly delineated — a young man frightened, humiliated and resentful, because in a fight, which he invited, he had aroused the ill-will of Forbes and his group of friends. With mixed motives of bravado, resentment and desire to inspire fear, he carries a knife and shows it to many persons, making threats or boasts of what he will do to Forbes when he meets him. When he did meet and attack Forbes, who was then surrounded by a crowd of friends, he may have hoped to make the group fear him and to wipe out his humiliation, but it can hardly be supposed that this frightened, humiliated boy, who had never been in trouble before, intended, in a public street in the presence of Forbes' friends, to kill Forbes with a knife which he had used when

a boy scout. Such an intent is belied by what the defendant said and did both before and after the fight. The attack may have been made with intent to injure Forbes, and the defendant may have been guilty of manslaughter, but assuredly the evidence produced by the People is insufficient to prove beyond reasonable doubt that the defendant is guilty of murder because when he stabbed Forbes in a fight he had formed a deliberate design to kill.

The judgment of conviction should be reversed and a new trial ordered.

LOUGHRAN, FINCH, RIPPEY, SEARS, LEWIS and CONWAY, JJ., concur.

Judgment of conviction reversed, etc.