■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v KENNETH SHANKLIN, Respondent.—Appeal from an order of the County Court of Albany County, entered February 10, 1977, which granted defendant's motion to dismiss the indictment. The evidence before the Grand Jury consisted mainly of testimony of several police officers and the written statement of the defendant. Viewed in the light most favorable to the People (see CPL 190.65, subd 1, par [a]; 70.10, subd 1), the evidence establishes that the defendant met his friend Elander Lewis in the early evening of October 15, 1976. They rode about the City of Albany in Lewis' car until 7:45 P.M. when, with Lewis driving, they went to a party in progress in a downtown apartment. At the insistence of one Max Threatt, they left the party at 10:00 P.M. and drove to Lewis' home, where he obtained a shotgun. Still accompanied by the defendant, Lewis drove back to the party, parked the car out of sight in an alleyway, and left the car with gun in hand. Because of the events at the party and certain comments made by Lewis, the defendant had good reason to believe Lewis intended to shoot Max Threatt. The defendant accompanied him part way to the apartment, but then returned to the car. As he was getting in the driver's side door, he heard two shotgun blasts.[1] He drove out of the alley onto a main street where he saw Lewis running, still carrying the gun. The defendant slowed, Lewis got in, and they sped away. At that moment a police vehicle, manned by Officers Guiry and Johnas, arrived and forced the Lewis car to a halt.

1. Max Threatt was shot to death by Lewis in front of the apartment where the party had taken place. The defendant was not with Lewis at the time.

Lewis, on the passenger side of the front seat, pointed the gun towards the driver's side window to fire at Officer Guiry, who had shouted "freeze, police." The defendant, sitting behind the steering wheel, leaned back from the line of fire. Lewis shot two rounds at the officers before being wounded by their return fire. During the exchange between Lewis and the police, the defendant was lying between the bucket seats. He remained in that position until arrested. The defendant was indicted for the attempted murder (Penal Law, § 110.00; § 125.25, subd 1) of Police Officers Guiry and Johnas and for assault (Penal Law, § 120.os, subd 2).[2] The indictment was dismissed on the ground the "evidence before the grand jury was not legally sufficient to establish the offense charged or any lesser included offense". (CPL 210.20, subd 1, par [b].) Although the various provisions of the CPL defining what constitutes legally sufficient evidence to support an indictment are rather intricate (see CPL 190.65; 70.10, subds 1, 2; Denzer, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 70.10, p 347; cf. *People v Sabella,* 35 NY2d 158, 167), the net effect of the statute is to require at least a prima facie case be presented to the Grand Jury *(People v Mayo,* 36 NY2d 1002). This means the evidence is legally insufficient if, unexplained and uncontradicted, it would still not warrant a conviction by a trial jury *(People v Dunleavy,* 41 AD2d 717, affd 33 NY2d 573; cf. *People v Mayo, supra,* pp 1002, 1004). With respect to all three counts, the prosecution contends the defendant is liable for Lewis' acts under section 20.00 of the Penal Law. In the context of this case, that section would require the People to establish that the defendant aided Lewis' attempt to murder the police officers and that the defendant rendered such aid "with the mental culpability required for the commission" of attempted murder and assault. Since those crimes are committed only when the actor intends to cause death or physical injury (Penal Law, § 110.00; § 125.25, subd 1; § 120.25, subd 2), the defendant is guilty of those crimes through section 20.00 only if he aided Lewis with the "conscious objective" that Lewis kill or physically injure the officers (Penal Law, § 15.05, subd 1). The only evidence which arguably establishes such a conscious objective on the part of the defendant is the testimony that he ducked between the seats as Lewis was about to fire the first shot. Such action might reflect an intent that Lewis bring his gun to bear on the officers and murder them. But it is at least equally consistent with an intent to avoid injury to himself. Intent may of course be proven by circumstantial evidence, but when the proof of an essential element of the crime depends exclusively on circumstantial evidence, "the facts from which the inference of defendant's guilt is drawn * * * must be inconsistent with his innocence and must exclude to a moral certainty every other reasonable hypothesis" *(People v Bearden,* 290 NY 478, 480). Whether circumstantial evidence meets this test is a question of law, not one to be resolved by the finder of fact *(People v Cleague,* 22 NY2d 363, 366). A conviction based on circumstantial evidence consistent with innocence must be reversed (see, e.g., *People v Cleague, supra; People v Bearden, supra; People v Ligouri,* 284 NY 309; *People v Paige,* 283 NY 479; *People v Woltering,* 275 NY 51; *People v Fitzgerald,* 156 NY 253). As to these cases it must be noted that prior to the enactment of the CPL it was uncertain whether the indictment should be dismissed upon a failure to make out a prima facie case (Pitler, New York Criminal Practice Under the CPL, § 14.40, p 812). The cited cases are all pre-CPL, and only in *People v Cleague (supra)* did the court dismiss the

---

2. The assault charge was based on the injury to Officer Guiry, who was hit in the eye by glass splinters from one of the shotgun blasts.

accusatory instrument. However, under the CPL there is no question that legally sufficient evidence must be presented before both the Grand and Trial Juries in order to survive a motion to dismiss (CPL 190.65, subd 1, par [a]; 290.10, subd 1; 470.20, subd 2; 470.40, subd 1; see Pitler, New York Criminal Practice Under the CPL, § 14.40, p 812). Since the Grand Jury evidence herein is legally insufficient to prove the defendant intended to cause death or physical harm to the officers (cf. *People v Ligouri, supra,* p 318; *People v Paige, supra* [circumstantial evidence of intent legally insufficient]), the judgment dismissing the indictment must be affirmed. Order affirmed. Greenblott, J. P., Sweeney, Mahoney and Main, JJ., concur; Kane, J., concurs in the following memorandum in which Greenblott, J. P., Sweeney and Main, JJ., concur. Kane, J. (concurring). "Legally sufficient" for the purpose of an indictment means competent evidence which, if accepted as true, would establish every element of the offense charged, but this does not mean that any such element must be established beyond a reasonable doubt (compare CPL 70.10 with CPL 70.20; *People v Mayo,* 36 NY2d 1002, 1004). This distinction poses difficulty in cases like this because one of the elements rests on circumstantial proof and the standard employed for determining the adequacy of that type of proof evolved from situations in which the validity of a conviction was at stake. The classic test that circumstantial evidence must exclude every hypothesis except that of guilt to a moral certainty is probably only a convenient way of stressing that guilt must always be proven beyond a reasonable doubt (see Richardson, Evidence [10th ed], § 148, pp 119, 120). Consequently, it would seem logical to jettison this stringent measurement of circumstantial proof when dealing with accusations (see *People v Sabella,* 35 NY2d 158, 168), but it has usually been assumed that the moral certainty equation applies to indictments (e. g. *People v Eckert,* 2 NY2d 126, 129). Moreover, the prima facie concept developed from an earlier requirement that the evidence be such that it would "warrant a conviction by the trial jury" (former Code Crim Pro, § 251; *People v Peetz,* 7 NY2d 147, 149) and I must agree with the majority that this theory possesses continued viability *(People v Mayo, supra; People v Dunleavy,* 41 AD2d 717, affd 33 NY2d 573). As a result, even though I am dissatisfied with the yardstick used to evaluate circumstantial evidence when considering the sufficiency of an indictment, I must concur that defendant's ambiguous action in leaning backward does not bespeak the requisite homicidal intent that would warrant his conviction for attempted murder or an intent to cause physical injury that would warrant an assault conviction.