THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JOHN C. SACCO, Respondent.

Fourth Department, November 10, 1978

## APPEARANCES OF COUNSEL

*Edward C. Cosgrove,* District Attorney (*Judith Blake Manzella* of counsel), for appellant.

*Frank R. Nicosia* for respondent.

### OPINION OF THE COURT

MOULE, J. P.

Defendant owns a two-story building located in the City of Buffalo. During 1976 the first floor of the building was leased as an upholstery shop with the exception of a small room which defendant reserved for his own use as a storage area. This room could be entered through a door which opened from inside the upholstery shop or through a door from a foyer which could be entered by an outside door in the front of the building. The second floor was leased to a dance studio and the stairway to this studio was reached through a separate door from the front foyer.

On the evening of June 16, 1976 at about 10:48 P.M. defendant went into the upholstery shop after it had been locked by the proprietor. About 10 minutes later four men tapped on the door that defendant had entered and went in, with the door closing behind them. One of the men was carrying at his side a partially rolled-up grocery bag. Shortly thereafter, a neighbor heard a noise like someone hammering. About 10 to 15 minutes after the four men entered defendant's building, two other men entered. Approximately 10 minutes later, a gunshot was heard and the six men, wearing gloves, left the premises. One of the men walked to a nearby pay telephone and said over the phone that there had been a mugging or a shooting. After the six men left, defendant was found lying in the front doorway of the upholstery shop; he yelled that he had been shot and there were bloodstains near the opened door leading from the shop to his room.

When a neighbor responded to defendant's call for help, defendant warned her that she "didn't see anything or hear anything" and that she "didn't know anything." A Buffalo police officer arrived at defendant's building shortly after midnight, at which time defendant told him that there was nobody inside the building and he should not go inside. When the officer asked defendant who shot him, defendant said, "Nobody shot me." A search of the first floor of defendant's building revealed the presence of a cardboard box on top of an air conditioner in defendant's room. Among other things, the box contained a revolver, a sawed-off shotgun with its serial numbers removed, a carbine, ammunition, license plates, knives, gloves and a shopping bag in which there was a ski mask. Additionally, a double-barreled shotgun was found partially hidden in a sofa in one of the rooms of the upholstery shop. A side door of the upholstery shop was found open.

An indictment was returned against defendant, charging him with three counts of criminal possession of a weapon in the third degree resulting from the discovery of the revolver, the sawed-off shotgun and carbine (Penal Law, § 265.00, subd 3; § 265.01, subd [1]; § 265.02, subd [1]), a fourth count of criminal possession of a weapon in the fourth degree resulting from the discovery of the double-barreled shotgun (Penal Law, § 265.01, subd [4]), and a fifth count of criminal possession of a weapon in the third degree resulting from the defaced serial numbers on the sawed-off shotgun (Penal Law, § 265.00, subd [7]; § 265.02, subd [3]). Defendant's motion to dismiss this

indictment was granted on the ground that there was insufficient evidence before the Grand Jury to sustain it (CPL 210.30). The People contend that the evidence presented to the Grand Jury was sufficient to support the charges in the indictment because it established defendant's possession of the weapons.

■ ■ A Grand Jury indictment should not be dismissed absent a clear showing by defendant that the evidence before the Grand Jury, even if unexplained or uncontradicted, would not warrant conviction by a trial jury *(People v Gallucci,* 62 AD2d 1129, 1130). Moreover, on an appeal from an order dismissing an indictment for insufficiency of Grand Jury evidence, the facts should be viewed in the light most favorable to the People *(People v Shanklin,* 59 AD2d 588; cf. *People v Cohen,* 43 NY2d 872).

Each of the provisions of the Penal Law under which defendant was indicted requires as an element of the respective crime that defendant have possessed the weapon proscribed by the particular provision. Possession is statutorily defined in subdivision 8 of section 10.00 of the Penal Law as having "physical possession or otherwise [exercising] dominion or control over tangible property." This definition of "possession" has been interpreted as encompassing the doctrine of constructive possession as well as physical possession *(People v Sierra,* 45 NY2d 56, 60; *People v Diaz,* 41 AD2d 382, 384, affd 34 NY2d 689; see *People v Phiefer,* 43 NY2d 719). Since there was no evidence before the Grand Jury showing defendant's actual physical possession of the weapons, the issue narrows to whether there was sufficient evidence before the Grand Jury to show constructive possession of the weapons by defendant.[1]

■ Where contraband is found on premises under a defendant's control, it may be inferred that he has both knowledge and control of it (see *People v Reisman,* 29 NY2d 278, 286). It is control of the premises which gives rise to the inference of

---

1. In determining this issue, the cases relied upon by defendant *(People v Portese,* 279 App Div 63 and *People v Tumminaro,* 242 App Div 501) are inapposite. Both cases involved possession of weapons under former section 1897 of the Penal Law of 1909. To constitute the crime of possession of a weapon under that provision, the possession must have been one "which place[d] the weapon within the immediate control and reach of the accused and where it [was] available for unlawful use if he so desire[d]" *(People v Persce,* 204 NY 397, 402). The provisions of the Penal Law under which defendant was indicted and, in particular, the definition of "possession" under subdivision 8 of section 10.00 of the Penal Law (of 1965), have no such limitation.

unlawful possession and mere access by other persons is insufficient to defeat a charge of constructive possession *(People v Schriber,* 34 AD2d 852, 853, affd 29 NY2d 780). Therefore, once it is established that defendant exercised sufficient control over the premises, he may be deemed to have constructive possession of contraband found in it (see *People v Tirado,* 47 AD2d 193, affd 38 NY2d 955).

■ Possession may be proven by circumstantial evidence *(People v Strong,* 42 NY2d 868, 869; *People v Gogarty,* 5 AD2d 413, 415) but "where reliance is placed solely thereon, the evidence must be such as to exclude, to a moral certainty, every hypothesis but that of guilt and be inconsistent with innocence" *(People v Harris,* 47 AD2d 385, 388).[2] "[T]his does not mean that absolute or metaphysical certainty is required * * * The issue is: does the evidence logically point to the defendant's guilt, and exclude, to a moral certainty, every other reasonable hypothesis" *(People v Eckert,* 2 NY2d 126, 129). In considering the sufficiency of the evidence, the circumstances should be viewed in their entirety *(People v Cathey,* 38 AD2d 976).

■ The evidence before the Grand Jury showed that defendant had reserved to himself exclusive use of the room in which the box containing the revolver, sawed-off shotgun and carbine was found. Defendant stored some of his belongings in this room and went into it a number of times when he visited the upholstery shop; he expressly instructed the upholstery shop operator that no one was to go into his room. Moreover, the only persons known to have keys to the upholstery shop at the time the weapons were discovered were the proprietor of the upholstery shop and defendant. The proprietor and his two employees each testified that neither they nor anyone else used defendant's room. One of the upholstery shop employees testified that he had put furniture in front of the doors leading into defendant's room so that he thought nobody could go into it. Although defendant's brother, who had attempted to remodel the room as a photography studio six months earlier, testified that the furnace man, the electrician and "just about everybody that had a hand in the place had a key

---

2. *Harris* was an appeal from a conviction for drug possession. In the present case we are concerned with a pretrial dismissal of an indictment rather than a judgment of conviction; however, the same test for circumstantial evidence has been applied in reviewing a pretrial dismissal of an indictment (see *People v Eckert,* 2 NY2d 126; *People v Shanklin,* 59 AD2d 588, 589, *supra).*

for it", the Grand Jury apparently discredited his testimony, as they were entitled to do. Based upon the totality of the evidence, we believe the Grand Jury reasonably could have excluded every inference except that of defendant's control over the room in which the box of weapons was found and his exercise of dominion and control over the revolver, sawed-off shotgun and carbine found in it (cf. *People v Taggart,* 51 AD2d 863; *People v Harris,* 47 AD2d 385). Consequently, counts one, two, three and five of the indictment were improperly dismissed and should be reinstated. As to the double-barreled shotgun found in one of the rooms of the upholstery shop, however, the evidence is insufficient to show constructive possession by defendant. Accordingly, count four of the indictment was properly dismissed.

CARDAMONE, DILLON, HANCOCK, JR., and WITMER, JJ., concur.

Order unanimously modified, on the law and facts, and, as modified, affirmed, in accordance with opinion by MOULE, J. P.