THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v PETER LANCASTER, Respondent.

Fourth Department, January 24, 1986

## APPEARANCES OF COUNSEL

*Richard A. Hennessy, Jr., District Attorney (John Cirando* of counsel), for appellant.

*Wiles, Fahey & Lynch (Emil Rossi* of counsel), for respondent.

## OPINION OF THE COURT

CALLAHAN, J.

The People appeal from an order dismissing two counts of an indictment which charged defendant with attempted murder (Penal Law §§ 110.00, 125.25 [1]) and assault, second degree (Penal Law § 120.05 [1]).

It was on the evening of October 21, 1984, when defendant, who was then confined to the Hutchings Psychiatric Center in the City of Syracuse pursuant to a CPL article 730 retention order, allegedly beat and choked another patient therein while that person lay asleep in his bed. Employees interrupted the

act and physically restrained defendant from inflicting further injury to the victim.

Defendant was originally arraigned in Syracuse City Court on a misdemeanor charge of assault in the third degree and was ordered to be examined for mental competency pursuant to CPL article 730. The District Attorney then notified defendant and his attorney pursuant to CPL 190.50 that the People intended to submit the matter directly to the Grand Jury. Defense counsel objected claiming defendant was incoherent and would not be able to competently testify before the Grand Jury or make a rational decision whether to appear. Nevertheless, the District Attorney presented the matter to the Grand Jury. A three-count indictment was returned charging defendant with: (1) attempted murder in the second degree (Penal Law §§ 110.00, 125.25 [1]) for intentionally attempting to cause the death of the victim by repeatedly striking the victim with his fists and placing his hands around the victim's throat choking the victim in an attempt to kill him until such time as defendant was restrained; (2) assault in the second degree (Penal Law § 120.05 [1]) for intentionally causing serious physical injury to the victim by repeatedly striking him in the head with his fists and placing his hands around the victim's throat causing the victim to suffer head injuries; and (3) assault in the third degree (Penal Law § 120.00 [1]) for intentionally causing physical injury to the victim as a result of the same conduct specified in the second count.

Defendant was arraigned on the indictment and a plea of not guilty was entered on his behalf. Subsequent to the arraignment it was determined, after examination by psychiatrists, that defendant was psychotic and unable to assist in his own defense. The CPL article 730 order directed that defendant be committed to the custody of the Commissioner of Mental Hygiene for care and treatment until such time as he was determined not to be incapacitated.

After he was found to be no longer incapacitated, his attorney served an omnibus motion in which he sought, *inter alia,* dismissal of the indictment pursuant to CPL 210.20 on the ground that the evidence before the Grand Jury was not legally sufficient. Criminal Term dismissed counts Nos. 1 (attempted murder) and 2 (assault, second degree) of the indictment, with leave to the People to re-present such counts to another Grand Jury. The People appealed. Upon our review of the Grand Jury minutes, we reverse.

On an appeal from a motion to dismiss an indictment on the ground of insufficiency, we must look to see whether the evidence before the Grand Jury was "legally sufficient to establish the offense charged or any lesser included offense" (CPL 210.20 [1] [b]; 210.30; *People v Leonardo,* 89 AD2d 214, 216, *affd* 60 NY2d 683; *People v Deitsch,* 97 AD2d 327). The evidence is legally sufficient if there is competent evidence, which, if accepted as true, establishes every element of the offense charged or a lesser included offense and the defendant's commission thereof (CPL 70.10 [1]; 190.65 [1]; *People v Deitsch, supra,* p 329). In the context of a Grand Jury proceeding, legally sufficient means prima facie evidence, not proof beyond a reasonable doubt *(People v Mayo,* 36 NY2d 1002, 1004; *People v Brewster,* 100 AD2d 134, 139-141, *affd* 63 NY2d 419; *People v McCarter,* 97 AD2d 852; *People v Puma,* 97 AD2d 740). The test to be applied is whether there has been a "clear showing" that the evidence before the Grand Jury if unexplained and uncontradicted would not warrant conviction by a trial jury *(People v Dunleavy,* 41 AD2d 717, *affd* 33 NY2d 573; *see also, People v Rallo,* 46 AD2d 518, 527, *affd* 39 NY2d 217; *People v Leonardo, supra,* p 217; *People v Potwora,* 44 AD2d 207, 210). Furthermore, we must view the evidence in the light most favorable to the People *(People v Warner-Lambert Co.,* 51 NY2d 295, 299, *cert denied* 450 US 1031; *People v Leonardo, supra,* p 217; *People v Deitsch, supra,* p 329; *People v Sacco,* 64 AD2d 324, 327) and the burden of proving the insufficiency thereof rests on the defendant *(People v Howell,* 3 NY2d 672, 675; *People v Deitsch, supra,* p 329).

The minutes of the Grand Jury disclose that on the evening of October 21, 1984 defendant asked his roommate at Hutchings Psychiatric Center where Charles Locke's room was located. While proceeding there, he was stopped by an attendant who asked him where he was going. Defendant replied that he was going to Locke's room "to get something that belonged to him". Defendant was informed by the attendant that Mr. Locke was sleeping and that he could not go there. Defendant entered, nevertheless, jumped on Locke's bed and proceeded to beat him knocking him to the floor. By the time the attendant entered the room, defendant was on top of Locke and was punching him repeatedly about the face and head with closed fist. Despite attempts to restrain him, defendant started to strangle Locke by placing his hands around his throat. Defendant kept repeating that he wanted to kill Locke and told the attendant to let him go so he could finish him off.

When efforts to get defendant off Locke were unsuccessful, the attendant ran to sound the security alarm just outside the room and returned quickly to restrain defendant. Defendant was still strangling Locke and saying that he wanted to kill him and finish him off. At this time, the victim was "turning blue" and then a "milky white" and there was blood coming out of his eye and nose. Finally, the attendant was able to put defendant in a restraint hold, and he was removed from the room with the assistance of other employees who had responded to the alarm. Once removed, defendant was still uttering that they should have let him finish the victim off and that the victim was worthless and deserved to die. The victim was examined at a hospital where it was determined that he suffered a subconjunctive hemorrhage of his right eye and a grossly disfigured, extremely swollen upper and lower lip, together with other small abrasions.

The Grand Jury was instructed with respect to the legal definitions of attempted murder in the second degree, assault in the second degree and assault in the third degree. They were also instructed as to the legal definition of mental disease or defect (Penal Law § 30.05) as well as the rebuttable presumption that every individual is presumed to be sane (see, People v Silver, 33 NY2d 475). The District Attorney did not otherwise present any evidence bearing on defendant's mental status as it related to his ability to form the requisite intent to commit the crimes charged.

■ When we view this record in light of the principles applicable to the review of a motion to dismiss a count of an indictment for insufficiency, we conclude that the People presented prima facie evidence to support the charge of attempted murder in the second degree. There was proof that defendant, intending to cause the death of Charles Locke, engaged in conduct which tended to cause Locke's death (Penal Law §§ 110.00, 125.25 [1]; see generally, People v Bracey, 41 NY2d 296, 299-300). Also, there was evidence that defendant was choking the victim with his hands around the victim's neck in an attempt to strangle him. In addition, defendant indicated a desire and intent to kill the victim (see, People v Dobranski, 89 AD2d 250, 252). Defendant had to be physically restrained to prevent him from strangling the victim and "finishing him off", and apparently the victim was losing consciousness and was "turning blue" and then "milky white".

■ The court also erred in dismissing the second count of

the indictment which charged defendant with a violation of assault in the second degree under Penal Law § 120.05 (1). A court may grant a motion to dismiss an indictment or any count thereof only if the evidence is "not legally sufficient to establish the offense charged or any lesser included offense" (CPL 210.20 [1] [b]; *People v Deitsch, supra,* p 329; *People v Leonardo, supra).* Viewing the evidence in the light most favorable to the People as we must *(see, People v Termini,* 65 AD2d 825, 826; *People v Sacco, supra),* we conclude that the evidence before the Grand Jury, if unexplained and uncontradicted, would warrant a conviction by a trial jury *(see, People v Rallo, supra; People v Dunleavy, supra),* of the assault second charge or a lesser included offense. Therefore, reinstatement of the offense of assault in the second degree is required as well.

Defendant claims that dismissal of the first two counts of the indictment was proper, in any event, because the People deliberately withheld from the Grand Jury evidence that he was too mentally ill to form the requisite intent to commit the offenses charged in the indictment and because he was legally incompetent during the time the case was presented to the Grand Jury.

■ Although the District Attorney is required to instruct the Grand Jury on the law with respect to the matters before it, this does not mean that the Grand Jury must be charged with every potential defense suggested by the evidence *(People v Valles,* 62 NY2d 36, 38). We are unaware of any authority which requires the District Attorney to instruct the Grand Jury as to a possible defense involving defendant's lack of mental capacity as it relates to his ability to form the requisite intent to commit the crimes charged. The nature of the defense of mental disease or defect precludes its being the subject of Grand Jury consideration *(People v Galuppo,* 98 Misc 2d 395, 400; *cf. People v Valles, supra,* p 40 [Kaye, J., concurring opn]). A determination that a person is not responsible by reason of mental disease or defect means implicitly that defendant did, in fact, commit the crime charged but lacked criminal responsibility for his conduct. This determination is properly left to a trial jury, which, unlike a Grand Jury, is authorized to render ultimate findings of guilt or innocence *(People v Galuppo, supra,* p 400). In this case, the Grand Jury was aware that the crime occurred in a mental health hospital where defendant was a patient and the People were justified in relying on the presumption of sanity *(see,*

*People v Silver, supra)* to establish a prima facie case before the Grand Jury *(People v Delameter,* 96 AD2d 629).

■ Finally, we find no merit to defendant's claim that the indictment should have been dismissed because he was legally incompetent during the time the case was presented to the Grand Jury. CPL 730.40 (3) clearly authorizes the presentation of a case to the Grand Jury while a defendant is committed pursuant to a temporary order of observation *(see, People v Balukas,* 95 AD2d 813; *People v Searles,* 79 Misc 2d 850, 851). That section also provides that the Grand Jury need not hear the defendant pursuant to CPL 190.50 under those circumstances.

Accordingly, the order should be reversed, defendant's motion to dismiss should be denied and counts Nos. 1 and 2 of the indictment reinstated.

DILLON, P. J., DOERR, DENMAN and PINE, JJ., concur.

Order unanimously reversed, on the law, motion denied and counts Nos. 1 and 2 of the indictment reinstated.