The People of the State of New York, Respondent, v. Luis Diaz, Appellant.

First Department, May 8, 1973.

*Otto F. Fusco* for appellant.

*Jeffrey Philip Sinensky* of counsel (*George S. Stone* with him on the brief; *Mario Merola, District Attorney*), for respondent.

TILZER, J. On a hot day in June, the attention of three narcotics officers was drawn to a certain gypsy cab. There was one person (later identified as Emeridiano Santiago) seated in the back seat, the windows were closed and the cab's doors were locked. Upon closer inspection the officers spotted a loaded .25 caliber revolver lying in open view on the driver's seat. Santiago was ordered to unlock the door and when he emerged he was placed under arrest. A search of his person revealed 15 glassine envelopes containing heroin. The officers attempted to search the interior of the cab but were hampered by the gathering of a crowd. At that point the defendant Diaz arrived and after he admitted ownership of the vehicle, he too was placed under arrest. Defendant and Santiago were then taken to precinct headquarters and placed together in the sitting room, where they were overheard in conversation by Sergeant Ramirez (one of the arresting officers). According to the trial testimony, Diaz asked Santiago " to take the burden of the evidence ", and in return " he (defendant) would take care of him (Santiago)." After overhearing the conversation, the officers returned to inventory the contents of the automobile and found 347 glassine envelopes containing heroin, secreted deep inside the padding, behind the springs of the front seat of defendant's automobile.

Defendant, who testified at the trial, claimed that he parked the cab about two hours prior to the time the officers first arrived and that during those two hours he was engaged nearby in a stickball game. He further claimed that the cab had been left unlocked with the windows down. While acknowledging that he knew Santiago, defendant denied giving Santiago permission to enter the cab and maintained that Santiago was waiting to be driven home by defendant as a paying fare.

The sole issue presented on this appeal is whether the evidence is sufficient to support the finding inherent in the jury's verdict that the defendant " knowingly and unlawfully " possessed the drugs found secreted in his automobile.

Subdivision 8 of section 10.00 of the Penal Law defines possession as "physical possession or otherwise to exercise dominion or control over tangible property." As such, it is clear that defendant's conviction may be sustained if it was established that he was in "constructive possession" of the contraband in his cab. (See Practice Commentary, McKinney's Cons. Laws of N. Y., Book 39, p. 15.) We believe that the evidence, when considered in its totality (see *People* v. *Cathey*, 38 A D 2d 976), points to the inevitable conclusion that the drugs were within defendant's constructive possession.

In considering the proof necessary to establish knowledgeable possession, the Court of Appeals recenty stated: "The crime of possessing dangerous drugs requires a physical or constructive possession with actual knowledge of the nature of the possessed substance (Penal Law, §§ 220.05–220.20). Knowledge, of course, may be shown circumstantially by conduct or directly by admission, or indirectly by contradictory statements from which guilt may be inferred * * *. Generally, possession suffices to permit the inference that the possessor knows what he possesses, especially, but not exclusively, if it is in his hands, on his person, in his vehicle, or on his premises * * *. This, of course, is an elemental inference based on common experience and all but universal probabilities." (*People* v. *Reisman*, 29 N Y 2d 278, 285.)

The facts in this case which justify the inference that defendant knowingly possessed the drugs are as follows: It was established that defendant had actual possession of the vehicle until approximately two hours before the officers first arrested Santiago. During the time period involved, while defendant was allegedly engaged in the stickball game, he remained in close proximity to the automobile at all times, and it was in effect subject to his control. Indeed, defendant stated that he could see the cab from the area where he was playing ball. While defendant testified that the automobile was parked in such manner as to allow access by others, "mere access by other persons is insufficient to defeat a charge of constructive possession." (*People* v. *Schriber*, 34 A D 2d 852, 853, affd. 29 N Y 2d 780.) There was no indication that, during the time the automobile was left parked on the street, anyone other than Santiago had entered the automobile. And defendant's explanations concerning his relationship to Santiago were clearly refuted. Although defendant claimed that he had kept the keys, when Santiago was apprehended the keys were in the ignition. Additionally, the story that Santiago was waiting

three-quarters of an hour to hire defendant's cab to be driven a distance of three to four blocks defied belief.

Of considerable importance in determining whether the drugs were placed in the cab with defendant's knowledge and acquiescence is the exact location where they were found. In commenting on this factor, the trial court (upon sentencing) stated: "It may very well be that had the drugs been found on the floor under the front passenger's seat one could argue that the passenger in the rear upon seeing the officers approach threw it under the front seat, but this was not the case here. It was up in the springs * * * the fact is that they were so secreted up in that spring area that this jury could conclude that the defendant had owned that car and had secreted it there himself and not just someone throwing it on the approach of the officers." Certainly, the jury, in giving consideration to "common experience and * * * universal probabilities" (*People* v. *Reisman, supra,* p. 285) was well aware of the fact that the drugs could not have been so secreted at any time while defendant was present in the automobile without his knowledge and acquiescence. On the other hand, the jury properly rejected the highly speculative possibility that a stranger placed such valuable property in the automobile, in defendant's absence, without assurances of being able to retrieve it. Under any view of the facts, the sole logical conclusion was that defendant knew of the presence of the drugs.

And finally, we give consideration to the evidence concerning the conversation between defendant and Santiago. In our opinion those statements were incriminatory and could be considered by the jury as an admission of defendant's involvement with whatever contraband was found in the automobile. Simply stated, it was apparent from the statements attributed to the defendant that he knew he had been caught in possession of illegal drugs and he was engaging in a last effort to have someone else take all the blame.

In sum, the evidence established that defendant owned the vehicle in which there was found, in an area virtually inaccessible to the ordinary person, a cache of narcotics; that defendant was in actual possession of the vehicle until two hours prior to the time the narcotics patrol first arrived and was in close proximity to it at all times; and that defendant made statements incriminatory in nature. In addition to the above (which we find sufficient in and of itself), defendant's own testimony was refuted in material respect and otherwise unworthy of belief. While the evidence is circumstantial and must point "logically

to defendant's guilt and [exclude], to a moral certainty, every other reasonable hypothesis " (*People* v. *Harris,* 306 N. Y. 345, 351), such test is not a " substitute for reasoned thought." (*People* v. *Borrero,* 26 N Y 2d 430, 435). " In the end, it is a question whether common human experience would lead a reasonable man, putting his mind to it, to reject or accept the inferences asserted for the established facts." (*People* v. *Wachowicz,* 22 N Y 2d 369, 372). Reasoned thought and common human experience, we believe, dictated the verdict reached by the jury.

Accordingly, the judgment rendered April 28, 1972 convicting defendant of criminal possession of a dangerous drug should be affirmed.

MURPHY, J. (dissenting). I do not agree that this conviction can be sustained.

The facts which led to the acts charged are as follows: On June 19, 1971, at about 6:45 P.M., three police officers were cruising in a patrol car when their suspicions were drawn to a parked " gypsy cab " which had all of its doors locked, its windows closed, and one occupant seated in the rear. Upon closer observation, one of the officers saw a .25 caliber handgun in plain view on the driver's seat. The occupant, one Santiago, was induced to leave the cab and then arrested. A subsequent search uncovered 15 glassine envelopes containing heroin in his trouser pocket. As the officers then proceeded to search the cab, they attracted a crowd which began to assemble around the vehicle. Defendant, who had been playing stickball nearby, noticed the crowd near his cab and went to investigate. Upon his admission to ownership of the vehicle, he was questioned concerning the drugs found on Santiago and the gun found on the seat. Although he denied having any knowledge about either item, he was also placed under arrest and taken, with Santiago, to the station house. There a critical conversation between defendant and Santiago, conducted in Spanish, was allegedly overheard by a Spanish-speaking police officer. To the best of the officer's recollection " the defendant Diaz asked the other fellow, Santiago * * * to take the burden of the evidence " and " that he would take care of him." It should be parenthetically noted at this point that I find no justification for the District Attorney's interpretation of such request in his brief hereon as one " to take the burden of whatever evidence *was discovered.*" (Emphasis supplied.) Thereafter, the impounded vehicle was searched for any valuables needed for safekeeping and inventory and a brown paper bag, containing

347 glassine envelopes of heroin, was found underneath the upholstery of the front seat on the passenger side.

Defendant and Santiago were later indicted for possession of the heroin and of the pistol, while acting in concert with each other. Santiago has absconded and is presently a fugitive. Defendant testified in his own behalf and denied all culpability and of ever asking Santiago to assume any responsibility herein. He claimed that he left his cab unlocked with the windows half open when he went off to join the stickball game and, although knowing that Santiago was waiting to be driven home, denied giving him permission to enter his taxicab. The jury convicted defendant of "knowingly and unlawfully possess[ing]" a narcotic drug of a specified aggregate weight (Penal Law, § 220.15); but acquitted him of the gun charge.

The prosecution does not rely on any statutory presumption in this case and it clearly failed to prove any actual possession. The only basis for sustaining this conviction, then, is on a theory of constructive possession. Although I find no definitive decision upholding guilt on such theory, the indications are that under certain circumstances it may be permissible. (Cf. *People* v. *Reisman*, 29 N Y 2d 278; *People* v. *Schriber*, 34 A D 2d 852, affd. 29 N Y 2d 780.) Nevertheless, on this record I find the evidence insufficient to support the conviction on any basis. Absent physical possession, "dominion or control" must be shown. (Penal Law, § 10.00, subd. 8.) No connection was shown between defendant and the contraband found secreted under the seat of his cab other than ownership of the vehicle. The People contend that such ownership, plus proximity and the "express admission of guilt" suffice. But I fail to see where "proximity" was shown or how it adds any weight to the evidence; and I find no guilty admission to have been here made. Even if we credit the police officer's version of what he overheard, it would appear from the record that defendant was only referring to the gun and, perhaps, the narcotics found in Santiago's pocket. There is no basis for any assumption that he was also referring to a larger quantity of drugs which were later found, but concerning which he denied any knowledge. Moreover, in order to uphold this conviction we must not only find that defendant is deemed possessed of everything found in his cab, although he left it open and unattended for several hours, but that he knew of its presence. I have, of course, taken note of the Court of Appeals' recent statement that "generally, possession suffices to permit the inference that the possessor knows what he possesses, especially, but not exclusively, if it is

in his hands, on his person, in his vehicle, or on his premises'' and that ''knowledge * * * may be shown circumstantially''. (*People* v. *Reisman, supra,* p. 285.) However, the *Reisman* case involved the conviction of a person in actual possession of a package of marijuana and one of the questions involved was his knowledge of the contents of such package. In *People* v. *Nettles* (23 Ill. 2d 306, 308–309, cert. den. 369 U. S. 853), quoted with approval in *Reisman,* the Illinois Supreme Court stated: '' We are of the opinion, therefore, that where narcotics are found on the premises *under the control* of defendant, this fact, in and of itself, gives rise to an inference of knowledge and possession by him which may be sufficient to sustain a conviction for unlawful possession of narcotics, *absent other facts and circumstances* which might leave in the mind of the jury * * * a reasonable doubt as to his guilt.'' (Emphasis supplied.) It would, therefore, appear that immediate control must first be shown before any inferences may be drawn. (Cf. *People* v. *Nettles, supra; People* v. *Schriber, supra.*) And, while knowledge of possession may be established by circumstantial evidence, such evidence must, of course, still exclude to a moral certainty the hypothesis of innocence. (*People* v. *La Belle,* 18 N Y 2d 405; *People* v. *Powell,* 39 A D 2d 531.) Great emphasis has been placed on the location of the drugs. However, the arresting officers made no attempt to insert, from the rear seat, a paper bag containing any substance underneath the upholstery of the front seat; nor was it demonstrated that this could only be done with considerable effort. While the People ridicule the suggestion that the bag of drugs may have been hidden in the vehicle by someone else in the hope of retrieving it at a later date, it should be recalled that defendant operated a vehicle for hire and, therefore, access to it could be fairly easily obtained. Under the circumstances here disclosed, where defendant's cab was left open and unattended on a public street for several hours and another person, without permission, was found therein in possession of narcotics on his person, I find the evidence adduced legally insufficient to establish defendant's guilt of ''possession'' beyond a reasonable doubt. Accordingly, the judgment appealed from should be reversed and the indictment dismissed.

McGivern, J. P., and Kupferman, J., concur with Tilzer, J.; Murphy, J., dissents in an opinion in which Nunez, J., concurs.

Judgment, Supreme Court, Bronx County, rendered on April 28, 1972, affirmed.