■ The People of the State of New York, Respondent, v Jose Perez, Appellant. — Judgment, Supreme Court, Bronx County (Reilly, J.), rendered November 20, 1981 convicting defendant, after jury trial, of manslaughter in the second degree (Penal Law, § 125.15) and criminal possession of a weapon in the third degree (Penal Law, § 265.02), and sentencing him thereon to a term of imprisonment, is unanimously reversed, on the law, and as a matter of

discretion in the interest of justice, and a new trial ordered. The homicide here involved arose out of an altercation between defendant, the owner of a "bodega," and the decedent, a customer (perhaps nonpaying). It was the prosecution's contention that in the course of this altercation defendant drew a gun, which he possessed, and shot and killed the decedent. The defense was that it was the decedent who had and drew the gun, and that the decedent was accidentally shot in the course of the struggle. The Trial Judge remarked at the time of sentencing that the motives for the homicide are very obscure. While the evidence was certainly sufficient to sustain the jury's verdict, we cannot say that the evidence of guilt is overwhelming. We are constrained to reverse the judgment because of the persistent improper conduct of the trial Assistant District Attorney, which we think compromised the defendant's right to a fair trial. Despite the best efforts of the Trial Judge, frequent curative instructions by the Judge, Bench conferences at which the Judge tried to keep the prosecutor within proper bounds, and warned the prosecutor of the risk of mistrial, reversal or discipline, the prosecutor persisted in asking improper questions, making improper arguments, and attempting to evade the court's rulings. Among these improprieties were: 1. Various comments infringing on the defendant's privilege against self incrimination, his right to remain silent, his right to consult counsel and the presumption of innocence. In his opening statement, the prosecutor commented on the fact that after defendant brought the deceased's body in the deceased's car to the street in front of the hospital, the defendant did not go into the hospital to tell them about the body or report it to the police but went to his lawyer's office. Defendant's attorney on surrendering the defendant to the police, instructed the police not to question the defendant (apart from pedigree and fingerprints). This fact was first brought out by defendant's attorney without objection. When the District Attorney again brought it out on redirect, the court sustained defendant's objection and told the prosecutor that "because you didn't object to improper matter coming into this trial does not mean that you can exploit it." Nevertheless, on summation the prosecutor said, "Now, after he tells his wife what happened, what he did, her advice was 'get a lawyer, get to a lawyer fast' and so he goes to see Mr. Fernando [Fusco, defendant's attorney] and after he went to see and consult with Mr. Fernando, you know what Mr. Fusco [defendant's trial attorney] did and what he told the police." Again, on summation the prosecutor said that the detective "brought witnesses to the grand jury and this indictment resulted." 2. He attempted to shift the burden of proof on justification by saying that if the jury finds "that there was in fact no justification then there is nothing for me to disprove." This was a clear violation of the rule that the People have the burden of disproving such a defense beyond a reasonable doubt (Penal Law, § 25.00, subd [1]; § 35.00). The court immediately gave a curative instruction. The prosecutor persisted. "If you find that the defendant, that there's any truth to the defendant's version about justification — self defense". 3. The prosecutor made himself an unsworn witness despite frequent warnings by the court. He asked questions in the form of statements, bringing to the attention of the jury alleged facts which had not been testified to. Of these, perhaps the most flagrant was a question asked of the defendant with respect to the claim that the defendant had attempted to get witnesses to lie. The prosecutor asked "You don't know of any reason why Steve Lefkowitz would say such a thing?" Steve Lefkowitz never testified and there was no evidence in the record of the trial that he had said this. 4. The prosecutor engaged in improper and prejudicial cross-examination on collateral matters, e.g., how many wives the defendant had, and whether he was legally married to his first wife; and "[a]nd because you had a criminal record,

you couldn't get a beer license, right?" While no one or two of these and other questionable tactics might suffice to require reversal, the totality of this persistent misconduct deprived the defendant of his right to a fair trial. Were it not for this misconduct, we would have affirmed the conviction. Concur — Sullivan, J. P., Carro, Silverman and Milonas, JJ.