■ The People of the State of New York, Respondent, v Roosevelt Bentley, Appellant.—Judgment, Supreme Court, Bronx County (Daniel J. Sullivan, J.), rendered October 29, 1982, which convicted defendant of attempted murder in the second degree and criminal possession of a controlled substance in the second degree, and sentenced him to two concurrent prison terms of 12 1/2 to 25 years, both consecutive with a Federal prison sentence currently being served, modified, on the law, to reverse defendant's conviction of criminal possession of a controlled substance in the second degree and dismiss that count of the indictment, and otherwise affirmed.

Order, Supreme Court, Bronx County (Daniel J. Sullivan, J.), entered October 29, 1982 which denied defendant's motion to dismiss the indictment pursuant to CPL 30.30, 580.20, unanimously affirmed.

Joseph Bunyarko, a gypsy cab driver, was dispatched by a radio call to 1020 Grand Concourse and arrived there shortly after midnight on November 15, 1979. At that time, two people walked from the building toward the passenger door of the cab. He recognized one as Wanda, a regular customer, to whom he said "hello", and the other was the defendant, whom Bunyarko had never met before. The defendant asked, "Is your name Joe, are you car 84?", whereupon Bunyarko leaned over, rolled down the window on the passenger side of the car

and engaged in a brief conversation with defendant. Defendant then commanded: "Don't touch the window or I'll blow your head off" and fired one shot, which hit the car door. Bunyarko immediately drove off and upon encountering a police patrol car around the corner, he advised the officers of the incident. Immediately thereafter Bunyarko parked his cab and returned to 1020 Grand Concourse with Police Officer Kahmain and his partner. After a brief conversation with the doorman, they proceeded to apartment 16V.

Upon reaching that apartment, Officer Kahmain knocked on the door and announced "police" while Bunyarko stood aside. The peephole opened and a moment thereafter was shut. Kahmain continued to knock and call out "police" for approximately 10 minutes until the door was finally opened. Upon entering, four people were observed to be inside: a woman, a child, and two men, one of whom was the defendant, who was speaking on the phone to his lawyer, and the other was a man who was openly wearing an empty gun holster and who was in his 20's and the same height as defendant. Bunyarko identified defendant as the person who shot at him. The police thereupon arrested defendant and allowed the others to leave without questioning any of them.

Upon returning downstairs, Officer Kahmain recovered a spent nine-millimeter shell casing on the sidewalk in front of the building. Observing the bullet hole in the door of the cab, the officers pulled apart the door paneling and found a spent bullet fragment. Both Bunyarko and the defendant were then brought to the 44th Precinct.

It is unclear what steps, if any, were taken to secure apartment 16V overnight, but at 7:30 A.M. the following morning Police Officer Larry Coyle and his partner were assigned to safeguard that apartment. About an hour later, at approximately 8:30 A.M., Coyle searched the grounds outside of 1020 Grand Concourse. On the roof of the garage, in line with the "V" apartment line, Officer Coyle found a burst paper bag within which were two plastic bags containing almost four ounces of heroin, three guns, one of which was a fully loaded nine-millimeter pistol, and ammunition. These items were admitted into evidence over vigorous objection by the defense.

Defendant's conviction for criminal possession of a controlled substance in the second degree must be reversed and that count of the indictment dismissed. The wholly circumstantial evidence of constructive possession of the heroin

found on the garage roof was insufficient to prove defendant's guilt beyond a reasonable doubt.

" 'Possess' means to have physical possession or otherwise to exercise dominion or control over tangible property." (Penal Law § 10.00 [8].) The record is barren of any direct evidence that defendant had actual physical possession of the heroin at any time. The circumstantial evidence adduced at trial was insufficient to provide the requisite degree of proof that defendant had constructive possession of the drugs which were found the day after his arrest on the outdoor garage roof. When the evidence is entirely circumstantial, it must appear that the inference of guilt is the only one that can fairly and reasonably be drawn from the facts, and that the evidence excludes beyond a reasonable doubt every reasonable hypothesis of innocence. (*People v Sanchez*, 61 NY2d 1022.) The inference of constructive possession must fail in this case because under the facts here present equally reasonable alternative inferences could be drawn as to the ownership or possession of the drugs prior to the time they were discovered on the garage roof some 16 stories below defendant's apartment in an area which he neither owned, controlled, nor over which he exercised any dominion. (*People v Russell*, 34 NY2d 261.) Even if it may reasonably be inferred that the drugs were thrown from defendant's apartment, either of the other two adults present therein could have owned or possessed the contraband, and the police presence at the crime scene of the shooting would have deterred anyone who owned the drugs from returning that night or the following morning to recover them.

In sum, the circumstantial evidence failed to prove beyond a reasonable doubt the essential element that defendant possessed the drugs and, accordingly, the conviction for this charge must be reversed and the indictment dismissed with respect thereto.

As to defendant's conviction for attempted murder in the second degree, the evidence adduced supporting the jury's verdict seems to us very persuasive indeed. The defendant was identified by Bunyarko within a few minutes after the shot was fired, under circumstances strongly confirming the accuracy of the identification. The nine-millimeter pistol, connected by ballistic testimony with the recovered shell, was found under circumstances which strongly point to its having been disposed of by someone in the apartment in which the defendant was found. The record discloses no reason for supposing that the complaining witness mistakenly identified

the defendant as the shooter in lieu of another person present in the apartment.

As to the defendant's alleged telephone conversation with a lawyer while the police were awaiting entry into the apartment, it should be noted that this evidence had been inadvertently elicited by defense counsel during cross-examination, and that he did not ask the trial court to strike the testimony or give curative instructions to the jury. The reference to this testimony by the District Attorney in the summation was clearly improper, but we see no reason to suppose that if an appropriate application had been made to the trial court there would not have been an instruction given that would have fully addressed the problem that had been raised. Under all the circumstances, we are not persuaded that the trial assistant's unobjected-to passing comment, although clearly an improper one, requires reversal, in the interest of justice, of a conviction so compellingly supported by the evidence. Concur —Murphy, P. J., Sandler, Carro and Rosenberger, JJ.

Ellerin, J., concurs in part and dissents in part in a memorandum as follows: I concur in the majority's dismissal of the count of the indictment charging defendant with criminal possession of a controlled substance but would also reverse and remand for a new trial on the attempted murder charge by reason of the prejudicial nature of the prosecutor's summation, which deprived defendant of a fair trial.

In summation, the Assistant District Attorney, in marshaling the evidence, made the following statements:

"And then he [defendant] realized how stupid and he runs upstairs and that's when the thinking starts setting in. *Remember the testimony Joseph said that one of them was on the phone to the lawyer about not searching the apartment. Very smart.*

"Did you notice that the gun, the nine mil[l]imeter had no powder residue, no discharge? He cleaned it. Very smart. The other guns, the two of them had evidence of discharge. Isn't that curious? The other two guns are dirty. Yet this one particular gun is cleaned. That's another thing I thought counsel might hit on. It was recovered fully loaded, therefore it couldn't have been fired? Surprised he didn't mention that. Roosevelt had a lot of nine mil[l]imeter ammunition. He reloaded the gun. So when it was found it was no evidence of discharge. There was no round of ammunition missing.

"Very intelligent act and very deliberate; *the same type of man is calling to a lawyer while the cops are knocking on the door.*" (Emphasis added.)

These remarks urging the jury to infer consciousness of guilt by reason of the defendant's exercise of his fundamental right to consult a lawyer were improper and deprived the defendant of a fair trial.

While defendant raised no contemporaneous objection to these comments, he did raise the issue in a CPL article 330 motion. In any event, this court may, and should, consider this fundamental issue in the interest of justice. (CPL 470.15 [6] [a]; *see, People v Christman,* 23 NY2d 429; *People v Artis,* 67 AD2d 981.)

A citizen's right to interpose an attorney between himself and the "awesome power of the sovereign has long been a cherished principle". (*People v Settles,* 46 NY2d 154, 160.) The ability to exercise this right when the police are at one's door seeking entry is a fundamental underpinning of liberty in a free society.

For the prosecutor to impugn the defendant for exercising this right was highly improper. To arouse the jury to question defendant's innocence because he consulted an attorney in these circumstances was seriously prejudicial. That a defendant's silence, whether during police interrogation or in failing to testify during trial, may not be used against him by the prosecution is so firmly embedded in our law as to need no extended comment. (*Griffin v California,* 380 US 609; *People v Von Werne,* 41 NY2d 584; *People v Christman,* 23 NY2d 429, *supra.*) Prosecutorial comment on a defendant's exercise of his right to consult an attorney is no less damaging to the constitutional safeguards against self-incrimination than the proscribed references to a defendant's silence.

It is clear that the remarks in summation, concerning the defendant's speaking with a lawyer while the police were at his door, were solely calculated to impress the jury with defendant's consciousness of guilt and in my judgment deprived defendant of a fair trial. This court has criticized similar references in summation. (*People v Perez,* 90 AD2d 468.) In light of the less than overwhelming evidence of guilt in this case, the error cannot be considered harmless (*cf. People v Crimmins,* 36 NY2d 230; *People v Von Werne, supra*) and a new trial should be held on the remaining charge of attempted murder.