(April 23, 1991)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GASPAR FRANCIS, Appellant.—Judgment of the Supreme Court, New York County (Herbert Altman, J.), rendered on December 21, 1988, convicting defendant, following a jury trial, of criminal possession of a controlled substance in the fourth degree and sentencing him, as a predicate felon, to an indeterminate term of imprisonment of from three to six years, is affirmed.

The evidence presented herein, when viewed, as it must be, in the light most favorable to the prosecution *(People v Contes,* 60 NY2d 620), was legally sufficient to enable the members of the jury to have determined that the essential elements of the crime had been established beyond a reasonable doubt, including the fact that defendant was in constructive possession of the cocaine in question. In that regard, the drugs were recovered from a vehicle which he had been observed driving a week earlier, for which he possessed the registration and insurance card in his pocket and which he was standing beside when apprehended. According to defendant's parole officer, Patricia Street, she visited his home on April 22, 1988, and noticed two cars in the backyard, one of which was black and highly decorated with headers and gold paint designs. The following month, on May 11, 1988, she was walking near her office on 42nd Street and Eight Avenue in Manhattan when she spotted defendant driving a two-door car with license plate number "ASW 96". Although the automobile was now red, Street believed that it might be the same vehicle she had noticed in defendant's yard because it was decorated in the same elaborate manner. Moreover, as she approached her office, she saw the car which defendant had just been driving parked in a nearby parking lot.

Defendant, who was scheduled to make a regular visit that day, was waiting for her when she reached her office. A computer check of the subject vehicle disclosed that it was registered to a Steve Hodgson but had not been reported stolen and that defendant's driver's license had been suspended in 1984. At his next appointment on May 18, 1988, defendant claimed, in response to Street's inquiry, that on both that day and on May 11th, he had taken the subway to her office. In any event, at the conclusion of the meeting, which lasted from approximately 4:00 P.M. to 5:50 P.M., he immediately proceeded to the adjacent parking lot where Parole Officer Francisco Rivera observed him heading directly to the passenger side of a red Camaro whose license plate number was "ASW 96". Rivera and other parole officers arrested him as he stood beside the automobile conversing with a woman who was sitting in the passenger seat. A package containing vials of cocaine was discovered on the floor on the driver's side of the car.

In order to demonstrate constructive possession, the People were not required to prove that defendant physically possessed or even touched the contraband. Rather, it was necessary to show simply that the drugs were within his immediate

control and reach and, therefore, were available for his use if he so desired *(People v Lemmons,* 40 NY2d 505, 509-510; *People v Lynch,* 116 AD2d 56, 61). Neither defendant's absence from the vehicle for a period of time nor the presence of the woman in the passenger seat nor even the fact that it was not utterly inconceivable that another person might have placed the cocaine in the Camaro invalidates the jury's verdict. Certainly, mere access by others to the area does not by itself preclude a finding of constructive possession *(see, People v Torres,* 68 NY2d 677; *People v Diaz,* 41 AD2d 382, *affd* 34 NY2d 689). Further, the evidence at trial was devoid of any indication concerning why or how some unknown individual simply chose defendant's vehicle to be the receptacle of contraband. Similarly, there was no testimony that the female passenger had any connection with the drugs or was seen by the waiting parole officers or anyone else disposing of them, and the People decided against prosecuting her. As this court stated in *People v Diaz* (41 AD2d, *supra,* at 385), "the jury properly rejected the highly speculative possibility that a stranger placed such valuable property in the automobile, in defendant's absence, without assurances of being able to retrieve it." Consequently, the only reasonable conclusion based upon the facts educed at trial is that defendant knew that the cocaine was in the car.

Finally, the record of this case does not reveal any reversible evidentiary rulings on the part of the trial court. The Judge was certainly within his discretion in refusing to permit defendant to call witnesses to alleged drug transactions occurring in the same parking lot months after his arrest since "[e]ven where technically relevant evidence is admissible, it may still be excluded by the trial court in the exercise of its discretion if its probative value is substantially outweighed by the danger that it will unfairly prejudice the other side or mislead the jury" *(People v Scarola,* 71 NY2d 769, 777). In addition, in ascertaining the weight of a controlled substance, it is the aggregate weight which is crucial rather than the pure weight of the drug (Penal Law § 220.09). Thus, the Judge appropriately disallowed defense counsel from probing whether the police chemist removed water from the cocaine prior to measuring it. We have considered defendant's remaining contentions and deem them to be lacking in merit. Concur —Sullivan, Milonas and Smith, JJ.

Murphy, P. J., and Asch, J., dissent in a separate memorandum by Murphy, P. J., as follows: The defendant has been convicted after a jury trial of criminal possession of a con-

trolled substance in the fourth degree. His conviction rests upon proof of the following circumstances.

On May 18, 1988 the defendant attended his regularly scheduled appointment with his parole officer, Patricia Street. He remained in Ms. Street's office for at least two hours. Upon leaving her office, the defendant walked to an outdoor parking lot next to the building where Ms. Street's office was located. As he approached the passenger side of a red Camaro parked on the lot and began to address a woman seated in the car, the defendant was arrested by a number of parole officers. A search of the car and the defendant's person ensued. A bag subsequently found to contain 100 vials of cocaine was found lying on the floor of the car; it was situated near the gas pedal and about two-and-a-half feet from the car's occupant. While a current registration receipt and insurance card for the red Camaro were recovered from the defendant, the defendant did not possess the keys to the car or a ticket with which to claim the car from the parking lot. Indeed, as inquiry had revealed, the car was not the defendant's; it was registered to a Steve Hodgson. The car, however, had not been reported stolen and the only evidence of defendant's actual use of the vehicle was Ms. Street's testimony that she had spotted the defendant driving the car to his parole supervision appointment one week prior to his arrest. No belongings of the defendant were found in the car, nor was there any other evidence fairly linking the defendant to the vehicle.

As there was no evidence that the defendant had physically possessed the cocaine found in the Camaro, his prosecution was premised upon a constructive possession theory. Proof of constructive possession entails a showing that the defendant has exercised dominion and control over contraband (Penal Law § 10.00 [8]; *People v Sierra,* 45 NY2d 56, 60), something which may be inferred from the defendant's dominion and control over the area where the contraband is found *(see, People v Torres,* 68 NY2d 677; *People v Watson,* 56 NY2d 632). While the defendant's dominion and control may be circumstantially demonstrated, it is by now well-established that where, as here, the evidence is wholly circumstantial it must exclude to a moral certainty any hypothesis consistent with the defendant's innocence *(see, People v Torres, supra; People v Giuliano,* 65 NY2d 766; *People v Sanchez,* 61 NY2d 1022; *People v Cleague,* 22 NY2d 363; *People v Bentley,* 112 AD2d 109; *People v Harris,* 47 AD2d 385). It seems to me plain that the People's proof did not meet this high standard and that

the conviction should, therefore, be reversed and the indictment dismissed.

The relationship between the defendant and the vehicle in which the cocaine was found is, on this record, a largely speculative matter. It is clear that the defendant did not own the vehicle, and although there is proof that he used it, apparently permissively, on one occasion one week prior to his arrest (a circumstance which would explain his possession of the registration receipt and insurance card), there is nothing in the record which would support the inference that the car was ordinarily under his dominion and control. As noted, none of the defendant's belongings were found in the car and on the occasion in question he possessed neither the keys to the vehicle nor a ticket entitling him to remove the vehicle from the lot where it had been parked. But even if the general indicia of control were stronger, the case would still be highly problematic. It is, after all, undisputed that for a period of more than two hours just prior to the search of the vehicle, the defendant sat dutifully in Ms. Street's office. Clearly, the defendant could not from Ms. Street's office control access to the vehicle, even if it had been his prerogative to do so. Indeed, as the defendant sat in Ms. Street's office, the car was in fact occupied by someone who, so far as can be told from the record, was a stranger to him. The drugs which the defendant has been convicted of possessing were, of course, found practically at that person's feet.

To assert, as do my colleagues in the majority, that "it was not utterly inconceivable that [a person other than the defendant] might have placed the cocaine in the Camaro" is nothing if not an understatement. Indeed, the hypothesis that the car's occupant was responsible for the presence of the cocaine in the car is, on the record before us, highly conceivable if not compelling. The car's occupant would in fact be presumed to have knowingly possessed the cocaine found in the car (Penal Law § 220.25 [1]), and absent any evidence that the cocaine was jointly possessed, it would seem altogether possible if not probable that the car's occupant rather than the defendant was the possessor of the contraband. The strength of this hypothesis consistent with the defendant's innocence, requires the conclusion that the People in this entirely circumstantial case have not met their burden of proving the defendant's guilt beyond a reasonable doubt.

While it is true that access by others to the area where contraband is found will not necessarily preclude a finding of constructive possession, such access is certainly highly rele-

vant to the essential inquiry in constructive possession cases, namely, whether the defendant had sufficient control over the area where the contraband was found to warrant the inference that he effectively possessed the contraband and the further inference that he did so knowingly. Where there are compelling indicia of control, the fact that others may have had access to the premises, becomes less important. Thus, in *People v Torres* (68 NY2d 677, *supra),* convictions of narcotics possession on a constructive possession theory were upheld, despite evidence of access by others to the apartment where the contraband was found, in view of otherwise overwhelming evidence establishing the defendant's control over the apartment. The proof in *Torres* showed that the defendant, an habitual cocaine user, was the tenant of record of the apartment; that he had been seen by the doorman of the building in which the apartment was situated some 25 to 30 times in the month of the seizure; and that he had the keys to the apartment. The evidence showed further that on the morning of the seizure the defendant left his apartment for Puerto Rico carrying some of his belongings in a suitcase, but leaving others, among them his safe and his gun, behind in the apartment. Finally, there was proof that on arriving at his hotel in Puerto Rico the defendant gave the address of the apartment as his home address and telephoned the doorman of the apartment building to ascertain whether the marshall who that day executed a warrant evicting him from the apartment had " 'found anything' " *(supra,* at 679). Given this extensive and compelling evidence of control, it is not difficult to see why the Court of Appeals found the evidence of access by others to be relatively unimportant. Here, by contrast, the defendant had neither title nor lease to the car where the drugs were found and had been seen on only one occasion one week before his arrest using the car. He had no key to the car and no ticket to claim it from the lot. No belongings traceable to him were found in the car. Nor were there statements made by the defendant indicating that he knew contraband was present in the car. Surely, under these circumstances where the evidence of control was at best equivocal, the fact that another person had access to the vehicle and was, in fact, present in the vehicle along with the drugs at the time of their seizure, must be deemed of great and indeed dispositive significance. In distinction to *Torres,* there was in this case no showing from which the defendant's control of the area where the drugs were found could have been inferred with the high degree of certitude necessary to support a criminal conviction.

Much less was there proof of control sufficient to render negligible the possibility so clearly presented by the evidence that someone other than the defendant had placed the drugs in the car without his knowledge or acquiescence.

The other case cited by the majority for the proposition that access by others to the area where the contraband is found will not necessarily preclude a conviction on a constructive possession theory is *People v Diaz* (41 AD2d 382, *affd* 34 NY2d 689). In *Diaz,* the defendant was convicted of possessing heroin found secreted "deep inside the padding, behind the springs of the front seat of defendant's automobile" (41 AD2d, *supra,* at 383). The defendant had had actual possession of the vehicle until some two hours prior to the seizure, and although he left the car for the period immediately preceding the seizure, this court found that he was, during that interval, in close proximity to the vehicle and that the vehicle "was in effect subject to his control" *(supra,* at 384). Although another individual was present in the car at the time of the seizure, there was strong indication that he was an acquaintance of the defendant and was present in the car with the defendant's permission. It was in this context that the Court had occasion to state the following, only the closing fragment of which is quoted in the majority memorandum: "Of considerable importance in determining whether the drugs were placed in the cab with defendant's knowledge and acquiescence is the exact location where they were found. In commenting on this factor, the trial court (upon sentencing) stated: 'It may very well be that had the drugs been found on the floor under the front passenger's seat one could argue that the passenger in the rear upon seeing the officers approach threw it under the front seat, but this was not the case here. It was up in the springs * * * the fact is that they were so secreted up in that spring area that this jury could conclude that the defendant had owned the car and had secreted it there himself and not just someone throwing it on the approach of the officers.' Certainly, the jury, in giving consideration to 'common experience and * * * universal probabilities' *(People* v. *Reisman,* [29 NY2d 278,] 285) was well aware of the fact that the drugs could not have been so secreted at any time while defendant was present in the automobile without his knowledge and acquiescence. On the other hand, the jury properly rejected the highly speculative possibility that a stranger placed such a valuable property in the automobile, in defendant's absence, without assurances of being able to retrieve it." *(People v Diaz, supra,* at 385.)

As can be seen, it was absolutely crucial to the result in *Diaz (supra)* that the drugs had been hidden in a place that was not easily accessible, for it was from this circumstance that the Court reasoned that the defendant must have either been aware that the drugs had been hidden as they had, or given assurances that they could be retrieved. The contrast with the present case could not be more striking, for here the drugs were not secreted in any way; they lay openly on the floor of the Camaro. Obviously, nothing about the placement of the drugs within the Camaro provides a basis to infer that the defendant must either have known of their presence or been asked for assurances of their retrievability. As noted, the record provides no basis upon which to discount the very real possibility that the woman sitting in the Camaro had brought the drugs into the car on her own. And, certainly, as she sat there with the contraband within her immediate reach she could have had no need of assurances from the defendant that the drugs would be retrievable.

But even if the drugs had been placed in such a way as to raise a question as to their retrievability, this case would still differ markedly from *Diaz (supra)*. In *Diaz,* the issue of control over the car was all but foreclosed. The defendant in *Diaz* was the owner of the vehicle in which the contraband had been found and had either actually driven the vehicle or effectively controlled its use during the entire time leading up to the seizure. The issue in *Diaz* then was not so much whether the defendant had control over the vehicle, but whether, given the presence of someone other than the defendant in the cab at the time of the seizure, his control over the vehicle was sufficient to support the inference that he knowingly possessed the contraband found within. It was in resolving this question that the placement of the heroin came to assume such importance. Here, however, the question of whether the defendant knowingly possessed the contraband is prematurely posed since it was never established that the vehicle in which the contraband was found was in fact within his control. Unlike Diaz, the present defendant did not own or have any other legal entitlement to the vehicle in which the drugs were found, nor was there any evidence that he regularly used the vehicle. It was, moreover, uncontested that, in contrast to Diaz who remained either in possession of or close to his car at all times proximate to the seizure, the present defendant had absolutely no contact with the Camaro for at least two hours, and quite possibly as long as a week prior to the seizure. Finally, while it is clear that Diaz would have had access to

his cab at any time, it is equally clear that the present defendant had no key with which to enter or operate the Camaro and no ticket with which to remove it from the lot. Given the very weak evidence of defendant's control over the Camaro, one can only gather that it would have been an exercise in futility to seek assurances from him as to the retrievability of the cocaine.

It ought to be plain that the result which the Court reaches in this case is not sanctioned by either *Torres (supra)* or *Diaz (supra)*. Nor, for that matter, is it sanctioned by any other precedent. This is hardly surprising if one stops to reflect upon the implications of the present holding. If someone with as tenuous a connection to a vehicle as the defendant's to the vehicle at issue, may be said to have had dominion and control over the vehicle, it follows unavoidably that nearly anyone with a passing connection to a vehicle, and certainly any owner or lessee, can be held criminally responsible for any contraband found within the vehicle. The present case is particularly troubling because the general evidence of control over the vehicle was very weak, but even if it had been stronger the question would remain whether any circumstantial indicia of general control over a vehicle would be sufficient to support an inference of criminal possession where, as here, the vehicle had indisputably been out of the defendant's control for hours immediately preceding the seizure and had, during that interval, been occupied by a stranger who, at the time of the seizure, was, at least presumptively, in possession of the contraband found within. I would have thought it clear under these circumstances, in which any control the defendant may have had over the vehicle was drastically compromised and in which hypotheses consistent with the defendant's innocence have not only gone unrefuted but have drawn compelling support from the evidence, that the People had not met their burden of proving the defendant's guilt beyond a reasonable doubt.

Accordingly, the judgment of the Supreme Court, New York County (Herbert Altman, J.), rendered on December 21, 1988, convicting the defendant, after a jury trial, of criminal possession of a controlled substance in the fourth degree should be reversed and the indictment dismissed.